THOMAS D. TYLER *vs.* THE SUPERIOR COURT.

JULY 7, 1909.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)   *Attorney and Client.   Charging Lien.   Settlement by Client.*

Pending the hearing on exceptions, after verdict in his favor, plaintiff in the original action for assault and battery executed a release, under seal, to the defendant in such action, and signed an agreement that such case might be entered "settled," without the knowledge of his counsel. Before the trial, his counsel took an assignment of plaintiff's right of action to any judgment which might be rendered, as security for his fees, and gave notice thereof to the defendant.

The Superior Court ordered execution issued against such defendant (petitioner), in the name of plaintiff, to the use of his counsel, who had reduced their claim for services to judgment. On petition for *certiorari* to quash the record of the Superior Court:—

*Held,* that the assignment of the cause of action was void as against public policy, and that plaintiff could not grant nor his counsel receive any interest therein legal or equitable, by any form of contract or agreement, in relation to an action for a personal tort before the entry of judgment.

*Held,* further, that the charging lien of an attorney extends only to his taxable fees and taxable disbursements, and not to his general claim for compensation, and *such* lien does not attach until after judgment entered.

*Held,* further, that, since no lien had attached, the record ordering issue of execution should be quashed.

CERTIORARI.    Heard on petition for writ, and granted. Sweetland, J., dissents.

BLODGETT, J.   The petitioner seeks a writ of *certiorari* to quash the record of the Superior Court in issuing an execution against the petitioner for the sum of $312.95, in the name of Patrick Concannon, plaintiff in an action for assault and battery and false imprisonment in said court, $212.95 thereof to the use of Irving Champlin and $100 thereof to the use of James Harris, in satisfaction of their respective claims for services as counsel for said Concannon, who, pending the hearing on exceptions, after verdict in his favor on June 18, 1906, for $375.83 and costs, thereafter, on July 12, 1906, executed a release under seal to petitioner in payment of the sum of $100 and signed an agreement that the case might be entered "settled," both of which acts were done without the knowledge of his counsel, the said Champlin and Harris.   The release and agreement of settlement were not filed in the Superior Court until May 31, 1907, two days after the decision of this court overruling the exceptions of the petitioner and directing the entry of judgment for Concannon on the verdict on May 29, 1907, as of the date of said verdict on June 18, 1906.

The counsel for Concannon, alleging that his settlement of the action with Tyler without their knowledge was collusive and for the purpose of depriving them of their fees, and claiming a charging lien in that behalf upon the judgment in *Concannon v. Tyler*, have respectively reduced their claims for services to judgment as against Concannon, and on their motion the Superior Court has ordered execution to issue against Tyler, as above set forth, after the alleged settlement by the parties who severally deny all collusion, and one of whom, Tyler, the petitioner here, has instituted this proceeding, and avers that the Superior Court is without jurisdiction to order execution to issue in the premises as aforesaid.

The question so presented is whether counsel have a charging lien against the petitioner for their services upon these facts.

It is important to note, in the first place, that, unlike many other States, we have no statute regulating this matter.   It is

also necessary to say that on February 12, 1906, and before trial in the Superior Court, Mr. Champlin took an assignment of Concannon's right of action to any judgment which might be rendered, in said action for assault, in favor of his client Concannon and against Tyler, now petitioner here, as security for his fees, and gave notice thereof to Tyler.

In *Rice* v. *Stone et al.*, 1 Allen, 566, it was held that an assignment for damages for an injury to the person was void at common law, even after verdict, on grounds of public policy. It was there said by Chapman, J. (p. 568): "No case is cited where it has been held that an assignment of a claim for damages for an injury to the person has been held good, when the assignment was made before judgment in an action for the tort. Such claims were not assignable at common law. On the contrary, a possibility, right of entry, thing in action, cause of suit or title for condition broken, could not be granted or assigned over at common law. . . . But in respect to all claims for personal injuries, the questions put by Lord Abinger in *Howard* v. *Crowther*, 8 M. & W. 603, are applicable. 'Has it ever been contended that the assignees of a bankrupt can recover for his wife's adultery, or for an assault? How can they represent his aggravated feelings?' And we may add the broader inquiry—has any court of law or equity ever sanctioned a claim by an assignee to compensation for wounded feelings, injured reputation or bodily pain, suffered by an assignor? There were two principal reasons why the assignments above mentioned were held to be invalid at common law. One was to avoid maintenance. In early times maintenance was regarded as an evil principally because it would enable the rich and powerful to oppress the poor. This reason has in modern times lost much, but not the whole of its force. It would still be in the power of litigious persons, whether rich or poor, to harass and annoy others, if they were allowed to purchase claims for pain and suffering, and prosecute them in courts as assignees. And as there are no counterbalancing reasons in favor of such purchases, growing out of the convenience of business, there is no good ground for a change of the law in respect to such claims. . . . A claim to

damages for a personal tort, before it is established by agreement or adjudication, has no value that can be so estimated as to form a proper consideration for a sale. Until it is thus established, it has no elements of property sufficient to make it the subject of a grant or assignment. The considerations which are urged to a jury in behalf of one whose reputation or domestic peace has been destroyed, whose feelings have been outraged, or who has suffered bodily pain and danger, are of a nature so strictly personal, that an assignee cannot urge them with any force.

"The character of this class of claims is not changed in this respect by a verdict before judgment. It must be made the subject of a definite judgment before it is assignable; a judgment upon which a suit may be brought. *Stone* v. *Boston & Maine Railroad,* 7 Gray, 539.

"It is said in *Langford* v. *Ellis.* 14 East, 202, note, that the moment the verdict comes the damages are liquidated. This was an action of slander. But the principal case of *Ex parte Charles,* 14 East. 197, in which the other was cited, is regarded as overturning it. *Buss* v. *Gilbert,* 2 M. & S. 70. And these cases hold that neither an action for breach of promise of marriage nor for seduction passes to an assignee in bankruptcy before judgment. In our practice, where the points in controversy are seldom raised by the pleading, but are brought out in later stages of the case, the claim remains in great uncertainty till the judgment is rendered. And the case of *Stone* v. *Boston & Maine Railroad,* cited above, follows the ancient case of *Benson* v. *Flower,* Sir W. Jones, 215, where it was held that an action of the case is not assignable till after judgment, when it is reduced to a certainty. . . .

"In view of these, and many other authorities to which we have referred, we are of the opinion that the ancient doctrine of the common law on this subject is still in force, and that the reasons on which it was originally founded are still valid. As an assignment of a claim for a personal injury is void, though it is made after verdict in an action to recover damages for the injury, the claim of the defendant Perrin cannot prevail." And this decision was affirmed in the recent case of *Flynn* v.

*Butler*, 189 Mass. 377 (1908). And see *Linton* v. *Hurley*, 104 Mass. 353; *Bennett* v. *Sweet*, 171 Mass. 601.

So in *Weller* v *Lichtenstein*, 68 N. J. Eq. 659, 662 (1905), it was said by Gummere, C. J.: "A right of action for personal injuries cannot be made the subject of assignment before judgment in the absence of a statutory provision to the contrary," and see cases cited.

And in *Hanna* v. *Island Coal Company*, 5 Ind. App. 163, it is said (p. 167): "Ordinarily, however, an attorney acquires no lien for fees until after judgment; therefore, until after judgment, the client may settle and compromise and release the cause of action in any manner he pleases without consulting his attorney, and the attorney has no power to prevent it. *Simmons* v. *Almy*, 103 Mass. 33; *Parker* v. *Blighton*, 32 Mich. 266; *Pulver* v. *Harris*, 52 N. Y. 73; *Roberts* v. *Doty*, 31 Hun. 128; *Connor* v. *Boyd*, 73 Ala. 385; *Swanston* v. *Morning Star Mining Co.*, 13 Fed. 215; *Young* v. *Dearborn*, 27 N. H.. 324. In such a case a lien can not be acquired before judgment, even by agreement between the attorney and client that will prevent the client from compromising and releasing the cause of action without the consent of the attorney, although the defendant may have notice of the agreement. *Coughlin* v. *New York, etc., R. R. Co.*, 71 N. Y. 443; *Kusterer* v. *City of Beaver Dam*, 56 Wis. 471; *Pulver* v. *Harris, supra.* If the cause of action is one for unliquidated damages, and is not assignable, the client cannot give his attorney any lien upon it that will prevent a settlement or compromise by the parties before judgment, even if the amount is definitely fixed and an agreement made that the same shall become a lien and the adverse party notified of the fact. Jones Liens, sections 206, 207. Actions for slander, and libel, assault and battery, personal injuries, resulting from the negligent conduct of others, are within the rule. . . .

"The charge of fraudulent collusion in the second paragraph of the complaint in nowise aids the appellant. Characterizing a transaction as fraudulent does not make it so in law unless it is so in fact; therefore, when the appellant charged that the appellee was guilty of a fraudulent collusion for the purpose

of cheating him 'out of his fees and expenses' it was incumbent upon him to state facts sufficient to support the charge. *Conant* v. *National etc. Bank,* 121 Ind. 323; *Bodkin* v. *Merit,* 102 Ind, 293; *Joest* v. *Williams,* 42 Ind. 565; *Ham* v. *Greve,* 34 Ind. 18.

"When Stark compromised his claim with the appellee and dismissed the action without the consent of his attorney, he did what he had the lawful right to do. The contract to bring the action was made with Stark by the appellant. The appellee had nothing to do with it. Stark was the owner of the cause of action, and as such, under the circumstances, had the absolute control of it until it passed into a judgment. Having settled and compromised it before judgment, the appellee was released. The appellant, having acquired no lien upon or interest in such cause of action, no obligation in his favor was created by the transaction against the appellee." And see *St. Joseph Mfg. Co.* v. *Miller,* 69 Wis. 391.

To these decisions may be added the authority of *Averill* v. *Longfellow,* 66 Me. 237, in which it was said by Appleton, C. J. (p. 238): "This was an action to recover damages for an assault upon the female plaintiff. The plaintiffs obtained a verdict and the defendant filed a motion for a new trial, and the cause was continued. After the continuance, and before judgment, the parties settled; and the plaintiffs' claim was discharged.

"The attorney, by whom the suit had been successfully prosecuted, claims that the demand had been assigned to him, and that this assignment was made before or at the commencement of the suit. But the demand was not assignable. It has been repeatedly held that a claim for damages for a personal assault cannot be assigned before final judgment, *Mc-Glinchy* v. *Hall,* 58 Maine, 152. *Rice* v. *Stone,* 1 Allen, 566.

"The lien of an attorney does not attach until the rendition of judgment. *Young* v. *Dearborn,* 27 N. H. 324. 331. Before that, the parties may settle and disregard the claims of the attorney. *Newbert* v. *Cunningham,* 50 Maine, 231. *Simmons* v. *Almy,* 103 Mass. 33. No lien in this case had attached. The court has no authority to set aside a settlement which the

parties have deliberately made. In accordance with their agreement, the entry must be 'neither party.' "

It thus appears that the assignment by Concannon to his counsel is void, and that the rights of the parties are to be considered as though it had not been made; and this leads to a consideration of the question what those rights are.

The citations heretofore made indicate the nature of the first ground urged by the petitioner here against the jurisdiction of the Superior Court in issuing said execution, viz.: that whatever may be the right of counsel to a charging lien after judgment, no such lien exists until judgment, and parties may at will settle their own cases without the knowledge or consent, and even against the will of their counsel, until that time.

The nature and extent of the right of counsel in this State after judgment are thus set forth by Durfee, C. J., in *Horton* v. *Champlin*, 12 R. I. 550, 552: "Primarily, without doubt, the lien originates in the control which the attorney has by his retainer over the judgment, and the processes for its enforcement. This enables him to collect the judgment, and reimburse himself out of the proceeds. It gives him no right, however, to exceed the authority conferred by his retainer. But inasmuch as the attorney has the right, or at least is induced, to rely on his retainer to secure him in this way for his fees and disbursements, he thereby acquires a sort of equity, to the extent of his fees and disbursements, to control the judgment and its incidental processes, against his client and the adverse party colluding with his client, which the court will, in the exercise of a reasonable discretion, protect and enforce. And on the same ground, the court will, when it can, protect the attorney in matters of equitable set-off. We think this is the full scope of the lien, if lien it can be called."

The opinion of Potter, J., in the above case, concurring in the dismissal of the action by the attorney, rests upon the ground that the attorney has no lien, in this State, save for his taxable fees and taxable disbursements, as for officers and other fees:

"The plaintiff evidently supposes that he has a lien, not only for the costs taxed to the attorney of the successful party, but for his charges and for all his services, sometimes called

8

fees, as he claims a lien for costs in cases where a party recovers debt or damages only, and no costs.

"It might possibly be for the public good if this was the law. If a man when he began a lawsuit knew that having employed an attorney he could not dismiss him, and that after he had gained his case he would be obliged to have another lawsuit with his own attorney to get his money from him, and so on again, it would tend very much to diminish litigation, and a defendant would get out of such a suit as quick as possible. . . .

If any attorney should be entitled to a lien upon a judgment for money for anything beyond his taxable costs, it would seem that he ought to have the same lien where the recovery is for land. See this question decided and a great number of cases quoted in *Humphrey* v. *Browning*, 46 Ill. 476.

"The lien claimed for the attorney is no part of the old common law. See *Getchell* v. *Clark*, 5 Mass. 309; *Baker* v. *Cook*, 11 Mass. 236, 238; *Simmons* v. *Almy*, 103 Mass. 33.

"A great deal of confusion may arise from not distinguishing between the costs taxed to the attorney and his charges for services. In many states there are costs taxed as between attorney and client, whereas we have none such here. And in countries or states where such a lien is held to exist the cases generally recognize that it extends not to counsel fees proper, but to the taxed costs only. *Ocean Insurance Co.* v. *Rider*, 22 Pick. 210; *Wright* v. *Cobleigh*, 21 N. H. 339. . . .

"In this State costs are taxed generally only to the party recovering and no costs are taxed as between attorney and client. It is the party who recovers the judgment and not the attorney. By the old law a fee was taxed *for* the attorney, evidently intending it as an allowance for the pay of his attorney. By the law as lately amended, a fee is taxed *to* the attorney, thus giving countenance to the claim that when recovered it belongs to him.

"If there is any lien, therefore, it should be only for this fee, unless he has paid the officers' fees or other fees. The travel and attendance is expressly taxed for the party, and how any attorney can have any claim for this, it is hard to see." And see *Cozzens* v. *Whitney*, 3 R. I. 79, 82; *Whitcomb* v. *Straw*, 62

N. H. 650; *Hill* v. *Brinkley,* 10 Ind. 102; *Ex. Parte Kyle,* 1 Cal. 331, affirmed in *Mansfield* v. *Borland,* 2 Cal. 507; *Currier* v. *Boston & Maine Railroad,* 37 N. H. 223.

In construing the phrase "fees and disbursements," above referred to in *Ocean Insurance Co.* v. *Rider,* the court said: "We think the statute does not refer to counsel fees but only to the taxable costs," and in *Wright* v. *Cobleigh, supra,* it is said of the attorney's lien: "This right is limited to the fees and disbursements of the attorney on that cause, and cannot be extended to 'commissions' or other charges, however proper in themselves," and see cases cited.

In *Humphrey* v. *Browning, supra,* the court say (pp. 477, 485): "The only important question presented by this record which we propose to examine is, has an attorney at law a lien upon the real estate recovered in an action of ejectment, prosecuted by him?

"This is a new question in this court, and if it rests upon a great preponderance of authority in its favor, as argued by appellees, it would seem to be no difficult matter to produce the authority. If it does exist in any country in the world, where the common law prevails, or equity jurisprudence obtains, the books ought to be full of such cases. Not a single case has been referred to by appellees sustaining their position. . . . A careful review of the authorities cited, satisfies us that no such lien, as claimed by appellees, has ever been allowed in any court in England, or in any of the states of this Union. No case directly on the point has been cited, for while, as in England, New York, Massachusetts, Georgia and Florida, attorneys have a lien on the judgments recovered, for their costs, nearly all the cases show the judgments were money judgments, and the lien allowed was for taxable costs only, and not where a *quantum meruit* compensation was claimed."

That an attorney's lien, in the absence of statutory provision, does not attach until after judgment is settled by Potter, J., in *Horton* v. *Champlin,* 12 R. I. 557; "In *Pulver* v. *Harris,* 52 N. Y. 73, 76, the court held that the suit was subject to the control of the party; that the attorney had a lien after judgment, but not before. The latter would prevent the party

from settling his case; and see *Simmons* v. *Almy*, 103 Mass. 33; *Averill* v. *Longfellow*, 66 Me. 237." And the doctrine is supported by abundant authority.

In *Parker* v. *Blighton*, 32 Mich. 266, the defendant settled with the plaintiff in a replevin suit, and it was said by Cooley, J. (p. 266): "This was an action of replevin in which the defendant in, error was plaintiff. The defendant below relied among other things, on a settlement which he claimed had been made with plaintiff, and which was evidenced by a writing. It was claimed on the part of the plaintiff that the writing was obtained by duress. It was also claimed that as the writing was obtained from the plaintiff in the absence of, and without the knowledge of his attorney, it was void as depriving him of his lien for his services. If this were so, it was necessarily conclusive, as the amount in controversy was so insignificant that the most moderate charge would exceed it. The circuit judge instructed the jury that the plaintiff could not thus settle the case without the consent of his attorney. This ruling was erroneous. The attorney had no lien whatever on the suit."

In *Henchey, Adm'x.* v. *City of Chicago*, 41 Ill. 136, which was an action for causing the death of plaintiff's husband by reason of insufficiently lighting and guarding an open drawbridge, the plaintiff settled the case and executed a release to the city pending the action, and without the knowledge of her counsel, and the court dismissed the case and denied the plaintiff's motion to reinstate, made upon several grounds, of which the fourth ground was: "The attorney for the plaintiff insists that he had an attorney's lien on the claim for damages which could not be defeated by the act of his client." The Supreme Court of Illinois said (p. 140): "The counsel for appellant also insists that he had an attorney's lien on the claim for damages which could not be defeated by the act of his client, and which gave him a right to prosecute the suit to judgment. The extent of an attorney's lien is not very well defined, and the cases in the New York Reports are especially conflicting. We are not, however, inclined to *hold*, that the lien attaches to a claim for unliquidated damages prior to the judgment.

"In *Getchell* v. *Clark*, 5 Mass. 309, on an application similar to the present, the court, refusing the motion, said: ' before judgment it was very clear the plaintiff might settle the action and discharge the defendant, without or against the consent of his attorney, who had no lien on the cause for his fees.' A similar rule is laid down in *Foot* v. *Tewksbury*, 2 Vt. 97; *Shank* v. *Shoemaker*, 18 N. Y. 489, and *Sweet* v. *Bartlett*, 4 Sanf. 661, and we regard it as by far the sounder principle. To hold that the lien attaches to a claim for unliquidated damages before judgment would embarrass parties in all attempts to settle their suits amicably, and thereby greatly tend to prevent a result always held to be desirable. Especially would this be the case under a system of practice like ours, where the compensation of attorneys is not fixed by law. Under such a rule, attorneys, by making a demand for unreasonable fees, would be able to prevent a settlement whenever they should desire. Highly as we think of our profession, we do not deem it desirable that they should thus be able to control the most important interests of their clients, independently of the wishes of the latter. It is better that clients should be at liberty to adjust their difficulties if they can. In the particular case before us, we have no doubt it would be most equitable to allow the lien. But we cannot establish the rule in reference to the merits of a particular case. ' Hard cases make bad law.' We think such an application of the lien as is here asked would be against the current of authorities and the general interests of society."

In *Alexander* v. *Grand Ave. Ry. Co.*, 54 Mo. App. 66, the plaintiff settled with the defendant an action for personal injuries sustained while a passenger on one of its cable street cars, and did so while the action was pending and without the knowledge of her counsel, and after notice from her counsel to the defendant company that "said attorneys for their services in said cause have taken an interest in whatever judgment or compromise may be obtained." The court refused to set aside the order of dismissal made later upon the plaintiff's own motion, one of the grounds of which was "that the settlement was in violation of the rights of plaintiff's attorneys, of which

defendant had notice," saying (p. 73): "The claim to which these papers refer must have for its foundation either a lien in favor of the attorneys or an assignment of a part of the claim. That an attorney has no lien for his services, on a judgment obtained by him was long since determined in this state. *Frissell v. Haile,* 18 Mo. 18; *Roberts* v. *Nelson,* 22 Mo. App. 28. And it could scarcely be pretended that an attorney, merely as such, would have a lien on the claim before it became a judgment, in the absence of a statute conferring such a lien, as the attorney can have no lien on the suit. *Parker* v. *Blighton,* 32 Mich. 266; *Coughlin* v. *Railroad,* 71 N. Y. 443; *Henchey* v. *Chicago,* 41 Ill. 136. Though there seems to have been a rule or practice adopted arbitrarily by some of the courts enforcing such liens. The court said in the foregoing case from New York, that 'the courts invented this practice and assumed this extraordinary power to defeat attempts to cheat the attorneys out of their costs.' But, as stated in that case and in the case cited from 18 Mo. 18, attorney's fees in those jurisdictions were 'fixed sums, easily determined by taxation,' and this power was exercised to secure them their fees."

In the recent case of *Boogren* v. *St. Paul City Ry. Co.,* 97 Minn. 51 (1906), the facts present some similarity to the facts in the case at bar: (p. 52): "This is an appeal by the attorney for the plaintiff from an order discharging an order to show cause why the attorney should not be permitted to continue the action for the purpose of determining and enforcing his alleged interest therein.

"Some time prior to July, 1904, the plaintiff, Charles L. Boogren, claimed to have a cause of action against the St. Paul City Railway Company for damages for personal injuries alleged to have been occasioned by the negligence of the company. On July 15, 1904, Boogren entered into a contract with the petitioner, Joel E. Gregory, an attorney at law, by the terms of which Gregory agreed to prosecute the action as the plaintiff's attorney and to pay all expenses of the suit, and in consideration therefor Boogren agreed to pay said party of the second part (Gregory) after the expenses of said suit and other expenses have been paid, fifty per cent. of all moneys

received from the St. Paul City Railway Company by party
of the first part as compensation for said injuries in said case
of *Charles L. Boogren* v. *St. Paul City Railway Company*.

"An action to recover damages in the sum of $10,350 was
thereafter brought in Ramsey county. On the trial the jury
disagreed, and the case was continued to the January, 1905,
term. On the defendant's motion the case was continued till
the February term, and set for trial on February 14. When
the case was called for trial, the plaintiff did not appear, and
his attorney stated that he was not able to find his client. The
defendant's attorney stated to the court that the defendant
had its witnesses *subpœnaed* and in court ready for the trial,
but that he would consent to a continuance of the case until
the April term of court. It was subsequently continued to
the May term of court, and then to the June term, by agree-
ment of the attorneys. On the call of the calendar on June
5 the defendant objected to any further continuance, and the
case was set for trial on June 9. On June 8 the defendant filed
a written dismissal of the action on the merits. This instru-
ment bore date of January 24, 1905, and was signed by the
plaintiff and defendant's attorneys. When the case was called
for trial on June 9, the defendant informed the court that the
action had been settled and that a dismissal had been filed.

"The petitioner then stated to the court that he knew noth-
ing of said dismissal, and asked that the action be held open
to allow him to present a petition to be allowed to continue
the action for the purpose of recovering his attorney's fees and
expenses. This petition was granted, and petitioner there-
after made the petition herein, and the same came on for hear-
ing on an order to show cause. The petition stated that the
settlement between the defendant and plaintiff was made with
the full notice and knowledge of the lien and rights of the
petitioner and for the purpose of defrauding and cheating him
out of his attorney's fees and expenditures, that his expendi-
tures were $328.75, that the plaintiff's damages were $5,000,
and that plaintiff was insolvent. The defendant moved to
dismiss the petition upon the grounds (1) that it did not state
facts sufficient to warrant the court in granting the petitioner

the relief prayed for: (2) because the court had no jurisdiction of the subject-matter. The appeal is from an order dismissing the petition. . . . The petitioner bases his right to continue the action for the protection of his alleged interests upon the theory (1) that he has a lien which it is the duty of the court to protect, and (2) that he is the equitable assignee of an interest in the cause of action by reason of the contract between him and the plaintiff.

"The order of the trial court was correct. The breach of professional ethics involved cannot affect the legal rights of the parties. The petitioner had no lien upon the cause of action. He had acquired no statutory attorney's lien (*Forbush* v. *Leonard*, 8 Minn. 303; *Nielsen* v. *City of Albert Lea*, 91 Minn. 388, 98 N. W. 195), and it is the settled law of this state that a lien cannot be created by such a contract upon a right of action arising out of personal tort. As said in *Hammons* v. *Great Northern Ry. Co.*, 53 Minn. 249, 54 N. W. 1108, 'The plaintiff had no lien—could not have any—on the cause of action. A cause of action for a personal tort is strictly personal. It is not in the nature of property, in the sense that any one but the injured party can have any right in it.' . . See also *Anderson* v. *Itasca Lumber Co.*, 86 Minn. 480, 91 N. W. 12, 291, and *Nielsen* v. *City of Albert Lea, supra.* . . . It has been said that the court will protect the attorney of a party to an action against a collusive settlement in fraud of his rights. This rule applies when the attorney has acquired a lien. *Weicher* v. *Cargill*, 86 Minn. 271, 90 N. W. 402. The language used in the New York and Georgia cases must be construed in the light of the statutes of those states, which give the attorney a lien upon the client's cause of action. 3 Am. & Eng. Enc. (2d ed.) 468. There are also serious practical difficulties in the way of such a procedure when the action is to recover unliquidated damages. The power to arrest or rescind the effect of a settlement is cautiously exercised in respect to suits for debts actually owing; and the power would be more cautiously applied to actions for torts, where it would be impracticable for the court, upon the opposing representations of the parties and without hearing the proofs, to ascertain whether there was

a just cause of action, or whether there was ground to distrust the justness of the settlement. The whole case would have to be tried before the court could pronounce that the suit was properly instituted, and that it afforded *prima facie* ground for the award of costs.  . . .

"The policy of the law favors the adjustment of claims and the termination of litigation, and the courts are not disposed to limit the right of parties in this respect. This practice may occasionally work a hardship upon attorneys, but it is nevertheless a salutary rule. An attorney whose rights are prejudiced must look to his client for relief, or in a proper case proceed directly against the party by whose fraudulent conduct he has been injured.

"The order appealed from is affirmed."

Likewise in *Lamont* v. *Railroad Co.*, 2 Mackey, 502, the facts closely resemble the case at bar, and are as follows: "This case, as is very well known, was an action brought to recover damages, for injuries alleged to have been suffered by the plaintiff in being forcibly and wrongfully expelled from the cars of the defendant.

"The case was tried three times, and on the last trial, the jury rendered a verdict for the plaintiff for fifteen thousand dollars. The case came, in the usual form, before this court on a motion for a new trial on bills of exceptions. It was argued by counsel, and while under advisement, the defendant settled with the plaintiff by paying him two thousand dollars, and received from him a release of all claims and demands, and an order to the clerk of this court to enter the case dismissed. This was done without the knowledge of the plaintiff's attorneys.

"After this was done, the court rendered its opinion, setting aside the verdict in the case below and ordering a new trial, and then this order to dismiss was filed; and after that the attorneys for the plaintiff came into court and moved the court to set the cause down for trial, notwithstanding the paper filed by the defendant purporting to be an acknowledgment that the case had been settled, on the ground that said pretended settlement between the plaintiff and the defendant was collu-

sive, and with knowledge on the part of the defendant that the plaintiff's attorneys were interested in the case to the extent of their fees for services, and that knowledge of such settlement was being concealed from them by the plaintiff.

"The motion was accompanied with an affidavit showing that the plaintiff had agreed to pay his attorney, Mr. Mc-Pherson, a contingent fee of 33 per cent. of the amount that should be recovered.

"The court thereupon passed a peremptory order that the defendant should pay to plaintiff's attorneys one-third of the sum of two thousand dollars, and that, in default thereof, the entry of dismissal should be struck out and the case set down for trial. That order was appealed from and that appeal has been the subject of discussion before us.

"In the argument here it was claimed, on the part of the attorneys for the plaintiff, that they had a lien on the cause of action, and that the court could enforce it by allowing the suit to proceed to trial for the benefit of the attorneys where it had been adjusted between the parties collusively with a view to cheat the attorneys out of their compensation. . Upon the other hand, it was claimed by the defendant that, before judgment, the parties to a pending suit have entire control of the subject-matter, and may settle it between themselves without reference to either the wishes or the interest of the attorneys.

"The common law recognizes the lien of an attorney upon moneys of his client in his hands, and, also, upon papers and documents in his hands, whether they be muniments of title, or causes of action, or evidence; but there is no such thing as the lien of an attorney upon a mere claim or cause of action which his client has against a third person, apart from the tangible vouchers of the claim which may be in the attorney's possession. The very essence of the common law is *possession*. The party, who has a lien loses it the moment he surrenders possession; and possession cannot be predicated of a mere abstract right in another person. It is conceded on all hands that the parties, before judgment, may compromise and settle between themselves without reference to the attorney; which

could not be the case if the attorney could be regarded as having *possession* of his client's cause of action.   .  .  .

"The present case illustrates the distinction particularly. Here is a claim for unliquidated damages, which is, in its very nature, incapable of being assigned in whole or in part to the attorney.  And, in fact, the agreement which is relied upon here does not purport to assign it in any part; but is simply an engagement on the part of the plaintiff to pay his attorney a contingent fee of thirty-three per cent. of the amount of the recovery; that is, he agrees that in case of recovery, he *personally*, will pay to his counsel a sum equivalent to thirty-three per cent. of the amount recovered.  It is clear, therefore, that he might as well agree to pay a gross sum of one thousand dollars, or any other gross sum, or to convey a house and lot in case of success in the suit.

"Now, in no sense can that collateral engagement of the client to his attorney be said to be involved in this suit.  Here is an action for damages suffered by the client.  It is not a suit to recover money stipulated in a collateral agreement to be paid by client to attorney, but it is to recover damages for injuries alleged to have been suffered by the client, and *quoad* that, the attorney cannot be interested as a party in the suit. It might as well be said that, where the client had agreed to do some collateral thing in case of the recovery of judgment, to convey a house and lot, for example, the court could, after this settlement, hold the defendant responsible for the plaintiff's engagement to convey that house and lot to his attorney.  You could maintain that proposition with as much reason as that the court could compel the defendant to pay to the attorney of the plaintiff the moneys or considerations which the client had collaterally engaged to pay to his attorney.  The courts will not enforce such a claim in that way.  They leave the attorney to his common law remedy on the contract.

"We think the whole course of the authorities is in that direction.  The law is stated in the first place in Parsons on Contracts, Vol. 1, p. 116, as follows:  'He (the attorney) has no claim for unliquidated damages in court until after judg-

ment.' The case of *Wood* v. *Anders*, 5 Bush. 601, is cited, which fully sustains this proposition.

"Again in Parsons, Vol. III, p. 269: 'But the lien on the cause for his fees does not attach until the judgment is rendered. Therefore, where in a case reserved, after the opinion of the court was pronounced in favor of the plaintiff, he forthwith assigned his interest in the judgment, and the defendant, during the term and before the judgment was actually entered, paid the whole amount to the assignee: it was held that the attorney's lien was thereby defeated.'

"In support of this, several cases are cited, all of which fully sustain the position in the text. . . .

" 'It is therefore, beyond dispute, that the plaintiff's attorney had neither a legal nor an equitable interest by way of assignment or lien on the cause of action. The defendant was not asking any favor of the court. It was in court simply insisting upon its settlement with the plaintiff as a defence to his cause of action. Therefore, if the attorneys are entitled to the protection they now seek, it is only by the exercise of the extraordinary power of the court, to which I have first above alluded, and I am prepared to say that such power should not be exercised in a case like this. It has not been conferred upon the courts by statute, usage or common law. Its exercise to secure to an attorney the statutory fees, small in amount and easily ascertainable, was just and proper, and could lead to no abuse. But to exercise it so far as to enforce all contracts between clients and attorneys, however extraordinary, is quite another thing. Here the attorneys were contractors. They took the job to carry this suit through, and to furnish all the labor and money needed for that purpose, and they are no more entitled to the protection which they now seek than any other person not a lawyer would have been if he had taken the same contract. When a party has the whole legal and equitable title to a cause of action, public policy and private right are best subserved by permitting him to settle and discharge that, if he desires to, without the intervention of his attorneys.' " (quoted from *People* v. *Tioga*, C. P. 19 Wend. 73, Cowen, J.) . . .

"But enough has been said to show that all the cases hold uniformly that the court will not interfere to enforce in a summary way, through the original suit, the collateral engagements of a client for the compensation of his attorney. We are certainly as desirous as any court could be to protect the members of the bar in their relations with their clients, but it clearly seems to be, if not beyond the power of the court, certainly a practice not sustained by any authority or precedent, to enforce an engagement of this character in a summary way; the court will leave the attorney to his common law remedy, and, therefore, we are compelled to reverse the order of the court below and to allow the order of settlement to stand."

Again in *Swanston* v. *Morning Star Mining Co.*, 4 McCrary 241, an action to recover damages for a personal injury was settled by the plaintiff without the knowledge of his counsel, and the court held, upon the motion to dismiss the action, as follows (p. 242): "The motion to dismiss upon this agreement is resisted, not by the plaintiff himself, but by his attorneys, who say, that they had a contract with the plaintiff, whereby in the event of their success in this suit, they were to receive as their compensation for services one-third of the amount which might be recovered. The question is made as to whether this is a champertous agreement, but we are not disposed to go into that question. It is one, perhaps, of some difficulty, and about which there is a considerable conflict of authority. It would undoubtedly be champertous if either of the attorneys had agreed to pay the costs of the proceeding; but whether a mere contract for a contingent fee of one-third of the amount recovered is champertous, is a question not entirely settled. We do not think it necessary, at all events, to pass upon it in this case.

"It is, perhaps, not improper to remark, however, that it is not a contract which commends itself very much to the favor of the courts, and this court would not be disposed to go any further than the law requires to uphold it. But even assuming that it is a valid contract as between the plaintiff and his attorneys, the question arises, how can we, by any order

of ours, continue this case and carry it on to judgment, after the plaintiff himself has sold the cause of action and received a sum which, he says, is in full satisfaction. The attorneys are not parties to the record; no judgment could be rendered in their favor, and, if we were to go on to trial, I do not see how it is possible that any judgment at all could be rendered upon the record in the face of this dismissal, this acknowledgment of payment in full by the plaintiff himself. If the counsel for the plaintiff had any lien upon anything, the court would protect them, perhaps, by some form of proceeding in this case; that is to say, the counsel might, perhaps, be allowed under your statute to intervene, if you have a statute authorizing such a proceeding as that, and to assert their rights in this suit. But it is very clear that the attorneys of the plaintiff have no lien upon anything in a case of this character. I believe it is well settled that an attorney has no lien even upon a judgment recovered by him for his client in an action, unless the statute gives it. It has never been claimed that an attorney would have a lien upon a claim for unliquidated damages, and there can be no foundation for a lien of any kind or description upon anything in controversy here.

" If the attorneys had in their hands a contract, a promissory note, or instrument of any description that could be called property, and had rendered services in prosecuting a suit upon it, perhaps they might, by proper proceeding, be allowed to enforce a claim or lien upon it.

"It is enough to say that there is no doubt of the right of the plaintiff to settle the suit without the consent of his attorneys, and that having done so, the controversy must be regarded as at an end, and the suit must be dismissed. If the attorneys have any claim against the parties who have made the settlement, they must assert it in some other mode of proceeding. It is not open for consideration here.

"The doctrine I have announced is supported by the case of *Coughlin* v. *Railroad Company*, 71 N. Y. 443, and *Hooper* v. *Welch*, 43 Vt. 169."

In *Wood* v. *Anders*, 5 Bush. 601, the Court of Appeals of Kentucky say (p. 602): "The lien secured by the *act* of 1866

to attorneys is upon claims arising on contracts, either express or implied, which are put in their hands for collection, and on *'judgments'* recovered in actions prosecuted by attorneys, without regard to the nature of the claim on which the action was prosecuted. But we do not understand the statute as going to the extent that for a claim for unliquidated damage in cases of tort, before *judgment* is obtained, the defendant or defendants are to be made liable for the fee of the attorney of the plaintiff, where the parties compromise and adjust their litigation before judgment. Such cases are not embraced by the letter of the act certainly, nor does it appear from the language that such was the intention of the Legislature; and courts should not give to it a meaning and operation more comprehensive than was intended. Such an interpretation would discourage compromises, and conflict with the *divine* precept to 'agree with thine adversary quickly, while thou art in the way with him, lest at any time the adversary deliver thee to the judge,' &c. Nor do we understand the common law as authorizing the relief sought.

"Wherefore the judgment is *affirmed.*"

See also *Voigt Brewery Co.* v. *Donovan, Circuit Judge,* 103 Mich. 190; *Randall* v. *Van Wagenen,* 115 N. Y. 527; *Frissell* v. *Haile,* 18 Mo. 18; *Paulson* v. *Lyson,* 12 No. Dak. 354; *Shank* v. *Shoemaker,* 18 N. Y. 489; *Mosely* v. *Jamison,* 71 Miss. 456.

In *Kusterer* v. *The City of Beaver Dam,* 56 Wis. 471, which was an action for damages for personal injuries suffered by reason of a defective sidewalk, the plaintiff settled with the defendant pending the trial and without the knowledge of her counsel, and the court dismissed the action, although the plaintiff had made an agreement with her counsel "to give them one half of the damages recovered in said action, and all the taxable attorney's fees and to pay all his own costs, and further that said attorneys should be at no court costs whatever; and the plaintiff further agreed not to discontinue the action nor settle the same without the consent of said attorneys." A copy of this agreement had been served on the mayor of the city before the day assigned for the trial and before the settlement by the parties, and the Supreme Court

of Wisconsin held, following the rule laid down by the Court of Appeals of New York, that "a party having a cause of action in its nature not assignable cannot, by an agreement before judgment or a verdict thereon, give his attorney any interest therein," saying (p. 477): "For the reasons given, we adopt and follow the rule above quoted from 71 N. Y. 443. The question above put must, therefore, be answered in the affirmative. Impressed with the equity of the claim on the part of the attorneys for the plaintiff, we have carefully reviewed many decisions, with the view, if possible, to protect them, at least to the extent of the taxable costs; but as the cause of action was not assignable, and hence remained, prior to judgment, under the absolute control of the plaintiff, and since costs were merely incident to recovery upon the cause of action, it logically follows that the attorneys had no vested interest, even in such costs, which could survive the settlement of the cause of action. Whatever claim they had for services was against their client on their contract with him."

In *Tillman* v. *Reynolds*, 48 Ala. 365, which was a suit on a promissory note, a settlement was made by the parties pending the action, and without the knowledge of the plaintiff's attorney, who claimed a lien for his services, which was denied by the Supreme Court of Alabama, which held (p. 367): "It is presumed that the purpose of the proceeding in the court below, was to compel the defendant to pay the plaintiff's attorney's fee for instituting the suit, out of the plaintiff's debt in his hands, before he paid the plaintiff the amount of the note in suit, or to make him liable for the fee, if he failed or refused to do so; because the attorney had a 'claim or lien' on the note in his possession, and the plaintiff herself was insolvent. In such a case as this, such a principle would make the defendant, in the event the plaintiff was entitled to a judgment at least to the amount of the fee due the attorney for the institution of the suit, security of the plaintiff for the payment of the fee. I am not aware of any principle governing the relation of client and attorney that goes so far. The defendant's liability is discharged when he pays the debt he owes to the plaintiff. And whether this be done before or after the in-

stitution of the suit, its effect is the same, except as to costs of suit. Payment of the debt in suit, in either instance, is a good defense. If the payment is made before action brought, it is a good plea in bar of the action and the costs; if it is made after action brought and before judgment, it is also a good plea in bar of the action, except costs up to the plea pleaded, as a plea *puis darien continuance.* I Chitt. Pl. 657-8, marg.; (\*page 689) 7 Bac. Abr. (Bouv.) p. 685; Rev. Code, §§ 2651, 2685. The proofs in this case show that the debt had been paid before the trial, but after suit brought. This being admitted, the court was bound to charge the jury to find for the defendant. Besides, the attorney for the plaintiff is not a party to the record in the court below. No judgment could be rendered in his favor, except a judgment by confession. His lien, when he has a lien, can not be enforced in this way by an involuntary judgment against the defendant, in a court of law,—*McCaa* v. *Grant,* 43 Ala. Rep. 262." See also *Connor* v. *Boyd,* 73 Ala. 385.

In *Weller* v. *Jersey City, Hoboken and Patterson St. Ry. Co.,* 66 N. J. Eq. 11, it was said by Chancellor Magie (p. 19): "But the contention on the part of complainants is that the attorney holding such an agreement or assignment of a share of the damages received may, by giving notice thereof to the tort-feasor, impose on the latter an obligation to account to him for such share of the compensation for such injuries as may be agreed upon between him and the person he has injured. To give such effect to a notice of such assignment would obviously operate to practically prohibit any composition between a tort-feasor and the person he has wronged, when the composition consists of a cash payment to the latter for a release. It would introduce into the negotiation for settlement, on the basis of a present payment to the injured person, the claim of one who was not injured, and whose only interest in the claim is what Lord Tenterden, in dealing with actions prosecuted in *forma pauperis,* called the '*spes spolii.*'

"Nor will such assignment fall within the reason of the doctrine respecting equitable assignments of choses in action under the circumstances disclosed in this bill. Such assign-

ments admittedly operate only where some fund or property comes into existence arising out of a previous possibility. He who holds such a fund may then be liable to account to the assignee thereof. Where a composition is made between the tort-feasor and the person wronged, on the basis of a payment for a release, the fund does not come into existence until the payments and the release are simultaneously exchanged. Then the fund thus created is in the hands of the releasor, and the assignee may follow it there; but it never existed in the hands of the releasee."

In construing the Maine statute in *Potter, Judge, etc.,* v. *Mayo et als.,* 3 Greenl. 34, Mellen, C. J., thus stated the policy of the law in this behalf (p. 37): "According to the language of the statute, then, it appears that an attorney's lien does not exist until judgment. The lien is upon that, and on the execution issued on such judgment. If we attend to the design and object of the provision, we shall arrive at the same conclusion. As we have above stated, the intention of the legislature was to protect the attorney's interest from the control of his client,—it was to give to him the security of the judgment debtor, in addition to the original responsibility of his client. Now it is perfectly clear that until a judgment is rendered, such additional security cannot exist, because until then no coercive power is given to the creditor, and it was against *this* power that the statute provision was intended as a guard."

We have thus reviewed at considerable length the decisions of the courts in other jurisdictions, that the nature and extent of the rights of counsel in this behalf might the more clearly appear. We therefore hold that the assignment of this cause of action was void as against public policy, and that Concannon could not grant, nor could his counsel receive, any interest therein, legal or equitable, by any form of contract or agreement between them in relation to an action for a personal tort before the entry of judgment; that the ruling of the justice of the Superior Court in issuing the execution, in which, conceding the invalidity of such assignment, he held that it was nevertheless valid as notice of a right which the law does not permit

to exist, was erroneous; that the so-called charging lien of an attorney extends, as was heretofore determined in the case of *Horton* v. *Champlin*, only to his taxable fees and taxable disbursements, and does not extend to his general claim for compensation, and that such lien does not attach until after judgment entered. Whether it may properly and wisely be extended is a question for the consideration of the law-making body; our duty is to declare the law as it exists. Since there had been no judgment entered at the time of the settlement of the case by the parties, no lien had then attached, and it is not necessary to consider whether the settlement was or was not collusion. All collusion is denied by affidavits of both Concannon and Tyler; nor does either of them seek to avoid the settlement thus made. Having been made at a time when they were lawfully competent to make it, and when no lien of counsel had attached, the settlement should stand, and must stand, as the parties have agreed. It is the duty and the purpose of this court to protect and enforce the rights of counsel in all cases before it, but in so doing we can not detract from the rights of their clients, nor give to counsel rights which the law does not confer. The petitioner here may well object to being burdened with these judgments, and may well contend that Concannon's counsel should not be allowed to visit upon the petitioner, who owed Concannon's counsel no duty, the consequences of Concannon's failure to inform his own counsel of the settlement he had made with the petitioner. Neither should he be allowed to impose upon the petitioner the payment of a sum which is not only in excess of the sum for which Concannon was and still is satisfied to release the petitioner from all liability, but is also a sum which is in excess of the entire judgment in the cause, when the payment in settlement is considered.

The record of the Superior Court ordering the issue of the execution is therefore ordered to be quashed.

Sweetland, J., dissents.

*Gardner, Pierce and Thornley,* for petitioner.
*Hugh B. Baker* of counsel.
*James Harris and Irving Champlin,* for respondent.