*61
 
 BOUDIN, Circuit Judge.
 

 On November 20, 1997, James Howe filed a petition in the federal bankruptcy court in Rhode Island under chapter 7, 11 U.S.C. § 701
 
 et seq.
 
 In amended schedules, he claimed as exempt three legal claims then pending or to be asserted by him in different courts, assigning them values as follows: a claim for personal injuries sustained by Howe in a motor vehicle accident ($15,000); a claim for breach of contract and related wrongs ($600,000); and a claim to recover on a dishonored check ($10). Like all of Howe’s property as of the date he filed for bankruptcy, his legal claims became part of the bankruptcy “estate” under the Bankruptcy Code, 11 U.S.C. § 541(a)(1), and are available to his creditors, unless they are exempt property.
 
 [1]
 

 The Bankruptcy Code permitted Howe to retain “any property that is exempt under ... [Rhode Island] or local law,” 11 U.S.C. § 522(b)(2)(A), but the Code does not say “exempt” from what. Obviously, the general notion is exempt from creditors, not (say) exempt from local property taxes. Some states have statutes listing property that is exempt “for purposes of bankruptcy,”
 
 e.g.,
 
 Ga.Code Ann. § 44-13-100, but Rhode Island law is less explicit. Nevertheless, one provision listing property “exempt from attachment” includes a series of items akin to those commonly exempted in bankruptcy
 
 {e.g.,
 
 wearing apparel, working tools up to $500, furniture up to $1,000, homestead up to $100,000), R.I. Gen. Laws §§ 9-26-4,-4.1, and the parties accept that the listing sets forth bankruptcy exemptions.
 

 The three legal claims sought to be exempted by Howe do not fit within any specific category in sections 9-26^4 and 9-26-4.1; but Howe argued that they do fit within a catch-all category, comprising “[s]uch other property, real, personal, or mixed, in possession or actions as is or shall be exempted from attachment and execution, either permanently or temporarily, by general or specific acts, charters of incorporation, or by the policy of the law.” R.I. Gen. Laws § 9-26-4(10). Howe argued in the bankruptcy court that under Rhode Island common law, his un-liquidated legal claims against others could not be seized and that they therefore fell within the statute’s provision for property “exempted from attachment and execution ... by the policy of the law.”
 

 The trustee and an unsecured creditor objected, and the bankruptcy court rejected Howe’s position, as well as other arguments not pressed on this appeal. The Bankruptcy Appellate Panel sustained the bankruptcy court. Howe has now appealed to this court. He contends, and we assume this to be true, that “the policy of the law” phrase includes exemptions that would otherwise qualify even if they exist in common rather than statutory law.
 
 Cf. Arch Lumber Co. v. Dohm,
 
 81 R.I. 69, 98 A.2d 840 (1953) (exempting children’s toys). The critical question is what Rhode Island law provides as to unliquidated legal claims and whether what it provides amounts to a bankruptcy exemption.
 

 In previous centuries, it was very hard in a law action for a creditor to lay hands on potential legal claims that the debtor might have against a third party or even an unliquidated debt where the obligation was admitted but the amount in dispute. Pre-judgment “attachment,” to establish jurisdiction or secure an anticipated judgment, was not generally available as to any property at common law,
 
 Martin v. Lincoln Bar, Inc.,
 
 622 A.2d 464, 469 (R.I.1993);
 
 see generally
 
 Crandall, Hagedorn
 
 &
 
 Smith,
 
 The Law of Debtors and Creditors
 
 § 6.04[1][b], at 6-33 (rev. ed.1991). As for post-judgment “execution” against the debtor’s assets, this was achieved through
 
 *62
 
 specific writs
 
 (e.g., fieri facias
 
 authorizing seizure and sale of personal property) that failed to reach equitable interests of the debtor and certain intangibles. Crandall,
 
 supra,
 
 § 6.05[5][a], at 6-115.
 

 Thereafter, pre-judgment attachment was developed as a remedy by statute.
 
 E.g.,
 
 R.I. Gen. Laws § 10-5-1
 
 et seq.
 
 Postjudgment remedies were expanded initially by the equity courts, which allowed a “creditor’s bill,” one of whose functions was to reach equitable interests of the debtor that fell outside the common law writs. Crandall,
 
 supra,
 
 § 6.05[5][a], at 6-115 to 6-116. Statutes, in turn, have expanded and in some measure supplanted the non-statutory common law and equitable remedies of judgment creditors.
 
 E.g.,
 
 R.I. Gen. Laws §§ 9-26-1
 
 et seq.,
 
 9-28-1
 
 et seq.
 

 There is a false neatness to this picture. The Rhode Island statutes pertaining to such remedies are a tangle of provisions cobbled together over time; they use words like “attachment” with somewhat different meanings in different contexts; and they include other important remedies, such as garnishment — which may be pre or post-judgment — -to reach debtor assets in the hands of third parties, R.I. Gen. Laws §§ 10-17-1 et seq. Statutory statements that such and such may or may not be “attached” appear, variously phrased, in various locations.
 
 E.g., id.
 
 §§ 9-26-4, 9-26-4.1, 9-26-5, 36-10-84.
 

 Still, nothing in the Rhode Island statutes to which we have been directed expresses any affirmative policy against the attachment, either pre or post-judgment, of a debtor’s legal claims
 
 as a class.
 
 Certainly specific kinds of legal claims
 
 (e.g.,
 
 to receive pensions or back wages) are affirmatively protected to one degree or another from attachment,
 
 e.g.,
 
 R.I. Gen. Laws § 9-26-4(8), (12), and we will return to Rhode Island’s special treatment of attempts to assign personal injury claims. But there is no general statutory bar to seizure of intangibles. Indeed, as we shall see, Rhode Island law facilitates such seizures. Against this background, we return to the question of what meaning should be given to section 9-26-4(10).
 

 In Howe’s view, that his legal claims could not (we will assume) be attached at common law pre-judgment, or executed against post-judgment, means that Rhode Island does have a “policy of the [common] law” that “exempt[s] from attachment and execution” such legal claims. But an alternative view is that the failure of common law remedies to reach such claims should be regarded merely as a gap in the law, reflecting the writ-based character of the common law (no writ, no right) and not as an “exemption” reflecting a policy or purpose to safeguard such interests from seizure by creditors in general or bankruptcy creditors in particular.
 

 Either reading of section 9-26-4(10) accords with its language, and fortunately we have an answer from the Rhode Island courts as to how they construe the section. In
 
 Rhode Island Nat. Bank v. Chase,
 
 16 R.I. 37, 12 A. 233 (1887), the state supreme court faced a claim that the predecessor to this section prevented attachment of someone’s interest in life insurance policies that had no cash surrender value, the objection being made that the property interest was not attachable because it was “equitable, uncertain and contingent.”
 
 Id.
 
 at 234. In language that effectively rejects Howe’s present position, the court said that “property which is meant to be protected by the exemption referred to is not property which is, from its nature, beyond the reach of attachment, but property which it is a matter of public policy to protect from attachment.”
 
 Id.
 

 [2]
 

 
 *63
 
 Howe counters by saying that the insurance policies in
 
 Chase
 
 had an ascertainable value and refers us to
 
 McKendall v. Patullo,
 
 52 R.I. 258, 160 A. 202 (1932), in which the Rhode Island Supreme Court referred to “[t]he general rule ... that an unliqui-dated claim cannot be garnished.”
 
 Id.
 
 at 203. There are obvious policy objections to a garnishment of an unliquidated debt to the extent that it calls on the garnishee to pay over moneys before they are found to be owed. But here the trustee does not seek garnishment or any immediate payment at all from those against whom Howe has what we will assume are disputed claims; rather, the trustee seeks only to take over Howe’s
 
 claims
 
 against those third parties, a step that does not implicate the concerns of the
 
 McKendall
 
 court.
 

 There is further evidence that Rhode Island has no general policy against attachment of claims against third parties. In the course of codifying execution remedies for judgment creditors, Rhode Island enacted a statutory provision codifying and arguably expanding the old creditor’s bill devised by the equity courts. R.I. Gen. Laws § 9-28-1. This provision permits an unsatisfied judgment creditor to reach “any equitable estate, any equitable assets, or any choses in action of the judgment debtor, except such as shall be exempt from attachment by virtue of statutory provision.” On its face, this language refutes any claim that Rhode Island is hostile to creditors taking over debtors’ legal claims against third parties.
 
 [3]
 

 Howe responds by pointing to the just quoted qualification (“except such ... ”), arguing that this incorporates section 9-26-4(10)’s reference to “policy” exemptions. But we have already explained why, under
 
 Chase,
 
 the gap left at common law as to intangibles is not properly viewed as an exemption at all. Further, Howe’s contrary view would virtually moot the inclusion in section 9-28-1 of “any choses in action of the judgment debtor” since in general these were not subject to attachment at common law and, on Howe’s reading, would have been added by the statute as a remedy only to be immediately subtracted by the “except such” proviso.
 

 Howe’s approach to section 9-26 — 1(10) was rejected by the Supreme Court, in an analogous context, almost a century ago.
 
 Page v. Edmunds,
 
 187 U.S. 596, 23 S.Ct. 200, 47 L.Ed. 318 (1903). Still, one can find more recent decisions looking in both directions.
 
 Compare In re Geise,
 
 992 F.2d 651, 658-59 (7th Cir.1993) (holding that property not subject to sequestration is not therefore exempt),
 
 with In re Mitchell,
 
 73 B.R. 93 (Bankr.E.D.Mo.1987) (holding property exempt where,
 
 inter alia,
 
 claim not subject to garnishment,
 
 aff'd
 
 855 F.2d 859 (8th Cir.1988)). In the end almost everything turns on how an individual state construes its own mix of statutes and common law rules pertaining to exemptions. Happily,
 
 Chase
 
 provides us such guidance, even though Howe can find scraps of language in his favor in other Rhode Island cases. But who would expect otherwise after more than a century of decisions?
 

 This brings us to a different, narrower issue, namely, whether Rhode Island law “exempts” personal injury claims from being reached by creditors even though it does not exempt claims against third parties in general from attachment or execution. Interestingly, the “federal” list of exemptions does provide an exemption of up to $16,150 for a debtor’s right to receive actual compensation for “personal bodily injury” (not including pain and suffering or compensation for actual pecuniary loss). 11 U.S.C. § 522(d)(11)(D). But Howe chose the alternative list of exemptions available under Rhode Island law, and while one can imagine that Rhode Island might have a policy reflecting the same protective concerns toward bodily in
 
 *64
 
 jury, neither Rhode Island’s statutes nor its case law adopts such a position.
 

 What Rhode Island cases do express is a policy of refusing to enforce the “assignment” of personal injury claims before they are reduced to judgment.
 
 Tyler v. Superior Court,
 
 30 R.I. 107, 73 A. 467 (1909). But this rule, although apparently still in force, is based on concerns — reflected in the now hoary rules against champerty and maintenance — about promoting litigation by “intermeddling volunteers” who purchase personal injury claims “for their own profit.”
 
 Etheridge v. Atlantic Mut. Ins. Co.,
 
 480 A.2d 1341, 1344-46 (R.I.1984). Those concerns are pretty faint in the case of a bankruptcy trustee who is simply trying to muster the bankrupt’s property for the benefit of creditors, none of whom likely wanted to be in the business of pursuing the debtor’s claims against anyone.
 

 While we have found no Rhode Island case directly in point, its courts have sensibly relaxed the ban against assignment of personal injury claims where the concerns just noted áre not implicated.
 
 E.g., id.
 
 at 1345;
 
 see also DeSenne v. Jamestown Boat Yard, Inc.,
 
 968 F.2d 1388, 1390 (1st Cir.1992) (applying Rhode Island law). Thus, it strikes us as doubtful that Rhode Island’s anti-assignment policy would bar an assignment in favor of creditors. However this may be, we think it clear in light of
 
 Chase
 
 that the Rhode Island policy limiting assignability of personal injury claims would never be described as an “exemption” within the meaning of section 9-26-4(10).
 

 Affirmed.
 

 [1]
 

 . Prior to 1978, whether property passed to the estate depended on what property was transferable and subject to seizure under state law; but the new Code adopted a general rule that the estate includes all of the debtor’s property interests, including intangibles.
 
 See Sierra Switchboard Co. v. Westinghouse Elec. Corp.,
 
 789 F.2d 705, 707-09 (9th Cir.1986).
 

 [2]
 

 . Chase
 
 was not a bankruptcy case. The statutory issue arose because the policy holder had assigned such of his property as was not “exempt from attachment”; one party said that this assignment did not include the insur-anee policies with no cash surrender value because they would be so exempt under section 9-26-4(10)'s predecessor.
 
 Chase,
 
 12 A. at 233-34.
 

 [3]
 

 . This statute has been deemed unconstitutional by this court for lack of procedural safeguards,
 
 Dionne v. Bouley,
 
 757 F.2d 1344 (1st Cir.1985), but these defects do not concern Rhode Island's willingness to allow attachment of intangibles.