Austin R. ETHERIDGE

v.

ATLANTIC MUTUAL INSURANCE
COMPANY

v.

AETNA CASUALTY & SURETY
COMPANY.

Alice MONGILLO

v.

Warren E. NICHOLS, d.b.a.

Nos. 81–565–Appeal, 81–573–Appeal.

Supreme Court of Rhode Island.

June 28, 1984.

Max Wistow, Jane E. Landers, Tobin & Silverstein Inc., Providence, for plaintiff.

Joseph A. Kelly, Carroll, Kelly & Murphy, S. Paul Ryan, Carroll, Kelly & Murphy, Susan B. Squires, Iannuccillo & Hines Inc., Providence, for defendant.

William A. Curran, Hanson, Curran & Parks, Providence, for Aetna Ins.

## OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of Atlantic Mutual Insurance Company (Atlantic) from a judgment entered in the Superior Court holding Atlantic liable for

$300,000, together with interest and costs, arising out of a boating accident that took place on August 11, 1972. Judgment was entered in favor of Aetna Casualty & Surety Co. (Aetna), the third-party defendant. We sustain the appeal in part. Also before us is the contingent appeal of Alice Mongillo from a judgment entered on behalf of Warren E. Nichols. This appeal is sustained, and the case is remanded for further proceedings. The facts of the case as found by the trial justice are as follows.

On the date of the boating accident Austin Etheridge (Etheridge) was a passenger on a twenty-two-foot motor launch powered by a 150-horse-power inboard-outboard engine. The boat was operated by Barry Brooke Mongillo (Barry) but owned by his mother, Alice Mongillo (Alice). It was conceded by the parties that on August 11, 1972, the boat either ran aground or struck some solid object as a result of Barry's negligence. This accident caused grievous bodily injuries to Etheridge. The parties stipulated that Etheridge was in the exercise of due care, and that as a result of the accident he sustained personal injuries and consequential damages in excess of the sum of $300,000 in addition to payments made and to be made by Aetna pursuant to a structured settlement agreement entered into between Etheridge and Aetna on March 1, 1974.

Etheridge originally brought an action for personal injuries against Barry. Barry died March 28, 1974, and thereafter Etheridge brought a direct action against Atlantic in its capacity as Barry's insurer pursuant to G.L. 1956 (1979 Reenactment) § 27–7–2. Atlantic filed a third-party complaint against Aetna, alleging that a "scope" or "umbrella" policy furnished by Aetna afforded liability coverage to Barry and Alice and that thus Aetna was fully responsible for any judgment in favor of Etheridge. Moreover, Atlantic claimed that a settlement agreement entered into by Aetna with Etheridge and the Mongillos had the effect of releasing and extinguishing all rights that Etheridge had in respect to his personal-injury claim. Atlantic also contended that Aetna was the real party in interest in the litigation and that since Etheridge was fully satisfied, the agreement was illegal and unenforceable as an assignment of a personal-injury claim. A second action was brought against Warren E. Nichols, d.b.a. Warren E. Nichols Insurance Agency (Nichols), for negligence and breach of contract for failure to provide appropriate underlying insurance through Atlantic. This case was subsequently argued before us and will be considered in this opinion as though all of the cases had been consolidated for argument.

Nichols, a licensed independent insurance agent who represented a number of insurance companies, had advised the Mongillo family in respect to insurance for many years. Alice's husband, a physician, was also advised about insurance matters by Nichols. Among other policies, Nichols had procured on behalf of the Mongillos the following:

    (1) A homeowner's policy with Union Mutual Insurance Company (Union) with a limit of liability of $300,000. This policy was originally issued in January 1969. This policy included coverage of a seventeen-foot boat.

    (2) A "scope" or "umbrella" policy, so-called, with Aetna having a limit of liability of $1,000,000, originally issued April 24, 1970. This policy was obtained through the Cruff Agency.

At the time of the issuance of the umbrella policy with Aetna, the Mongillos owned a seventeen-foot pleasure boat powered by an eighty-horsepower motor. When this boat was later sold, it was removed from the homeowner's policy issued by Union. Alice later acquired the twenty-two-foot boat that was involved in the accident on August 11, 1972. This twenty-two-foot boat was not eligible for coverage under the homeowner's policy. Nichols, after discussion regarding the required underlying insurance with the Cruff Agency which represented Aetna (for whom Nichols was not an agent), advised Alice to procure and

then did procure on her behalf a yacht policy with Atlantic in July 1971. The stated limit of liability under this policy was $50,000. Nichols was an authorized agent for Atlantic with the power to issue policies on its behalf up to a liability limit of $300,000.

When Alice notified Aetna of the accident, she was informed that Aetna would only provide coverage for losses exceeding the sum of $300,000. Aetna took the position that its umbrella policy required underlying insurance in that amount and that Aetna would be responsible only for losses that exceeded that figure. Nevertheless, on March 1, 1974, Aetna and Etheridge entered into a structured settlement agreement. Pursuant to this agreement, Etheridge was to receive $10,000 per year for the rest of his life, together with certain medical and educational benefits. Etheridge agreed to forego any further claims against the Mongillos or their assets (except their right to recover against Atlantic or Nichols) and agreed to pay to Aetna $50,000 plus one-half of the excess of any further judgment that might be obtained against Atlantic or any other third party. The Mongillos assigned and purported to subrogate to Aetna the proceeds of any claims that they might successfully pursue against Nichols and/or Atlantic. Aetna was given the right to bring action in support of these claims and released from any further liability under its umbrella policy.

In support of its appeal, Atlantic raises six issues. Four of these issues will be dealt with, not in the order set forth in Atlantic's brief, but in the order deemed by the court to be appropriate in disposing of the case. A fifth issue will relate to the liability of Nichols.

I

IS THERE A JUSTICIABLE CONTROVERSY EXISTING BETWEEN THE PARTIES?

Atlantic argues that the agreement between Aetna on the one hand and the Mongillos and Etheridge on the other hand constitutes an assignment of a personal-injury claim and is therefore void as against public policy. *See Tyler v. Superior Court*, 30 R.I. 107, 109, 73 A. 467, 467 (1909). Atlantic argues that such assignments are forbidden in order to avoid the evils of champerty and maintenance. The trial justice rejected this argument even though he found the agreement between Aetna and Etheridge not to be a subrogation as contemplated in *Hospital Service Corp. v. Pennsylvania Insurance Co.*, 101 R.I. 708, 227 A.2d 105 (1967). He found as a fact that there was "no danger of champerty and maintenance in such an arrangement." With this finding we are in full agreement. In *Hospital Service Corp.*, we described subrogation as either "legal" or "conventional." We stated that "[l]egal subrogation has its source in equity and arises by operation of law. * * * Conventional subrogation arises by acts of the parties and rests on contract." *Id.* at 712, 227 A.2d at 109. In that case we approved a subrogation agreement set forth in a Hospital Service Corporation contract whereunder the corporation was entitled to recover against third-party tortfeasors for sums paid on behalf of the corporation's subscribers for medical and hospital expenses. We approved this provision even though the Hospital Service Corporation was determined not to be in the insurance business so as to come within the terms of Rule 17(a) of the Superior Court Rules of Civil Procedure. 101 R.I. at 716–17, 227 A.2d at 111. In commenting upon the enforceability of this provision, we stated:

"We have come a long way since the ruling in *Tyler v. Superior Court, supra.* A plan such as offered by Blue Cross [Hospital Service Corp.] which affords a measurable degree of protection for the medical and financial well-being of its subscribers was unknown when the prohibition against assignment of personal injuries was set forth by this court." *Id.* at 715, 227 A.2d at 110.

In *Corning Glass Works v. Seaboard Surety Co.*, 112 R.I. 241, 308 A.2d 813

(1973), we upheld the validity of a conditional loan receipt given by Corning with a factual context somewhat analogous to that of the case at bar. Corning had suffered a loss that was due to an apparent theft under circumstances wherein employee dishonesty might be inferred. Corning was covered by a fidelity policy issued by Seaboard Surety Company (Seaboard) against loss caused by the fraudulent, dishonest, or criminal conduct of an employee. Corning was also covered by an all-risk policy issued by Appalachian Insurance Company (Appalachian) which covered all risks save those caused by acts of a dishonest employee. Each insurer sought to cast responsibility upon the other. Appalachian paid the loss to Corning and took a loan receipt under an agreement whereby Corning would bring an action against Seaboard for the benefit of Appalachian and trial counsel would be designated by Appalachian. *Id.* at 242–43, 308 A.2d at 815. We upheld the validity of this agreement, in the face of Seaboard's challenge, with the following observations:

"Courts generally have found this type of insurance loan receipt to be an acceptable business practice and have given full effect to its terms. 13 A.L.R.3d 56, § 5 (1967). The loan-receipt transaction performs a useful purpose in that it gives the insured a prompt supply of cash and protects the insurer's right of subrogation." *Id.* at 245, 308 A.2d at 816.

Generally courts have upheld and enforced subrogation agreements against a primary insurer of a liability carrier that provided secondary insurance. *Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co.*, 157 Ohio St. 385, 392–93, 105 N.E.2d 568, 571–72 (1952); *see Annot.* 31 A.L.R.2d 1324–27 (1953).

Unless courts espouse such a doctrine, an insured person may frequently find himself the helpless victim of a technical dispute between insurers each of which claims that primary responsibility or sole responsibility rests with an insurance carrier other than itself. Under such circumstances, a company that pays the loss and absolves the insured from liability, except for the right to proceed against the other carrier, has performed a function that furthers rather than impedes public policy. Such agreements ought not to be rendered void or impeded by the simplistic maxim that the common-law assignments of personal-injury claims were unenforceable. The ruling of *Tyler v. Superior Court, supra,* was designed to avoid the evils of champerty and maintenance. Applying this rule under circumstances in which champerty and maintenance are completely absent would be to throw the baby out with the bath water. We do not reject the general prohibition against the purchasing of personal-injury claims by intermeddling volunteers for their own profit. We simply cannot allow a salutary rule to be applied in a context in which it has no meaning and thereby obstruct an appropriate device for the payment of a claim by an insurance carrier that has an obligation to its insured to absolve him of liability without depriving itself of the right to pursue action against another insurance carrier that it considers to be wholly or partly liable for the loss.

In examining such an agreement, we shall look to substance rather than to form. Although the agreement in the case at bar does not track the loan-receipt device used in *Corning Glass Works v. Seaboard Surety Co., supra,* it is designed to accomplish the same result.

The contention by Atlantic that the agreement between Aetna and Etheridge constitutes a wagering contract is so lacking in merit as to require neither extended discussion nor analysis. This agreement was designed to transfer to Aetna in part the right that Etheridge might have in his direct action against Atlantic. Aetna, on behalf of its insured, had committed itself to substantial payments to Etheridge, even though its liability would not begin until losses in excess of $300,000 had been incurred. Aetna had committed itself irrevocably to this obligation and had earned the

right to be compensated at least in part from the proceeds that might have been obtained by Etheridge. There is no element of wagering or gambling involved in this agreement.

■ Consequently, we sustain the holding by the trial justice that there is a justiciable controversy between the parties and that neither Austin Etheridge nor Alice Mongillo has illegally assigned his or her rights to Aetna.

## II

### THE AGENCY OF WARREN NICHOLS

■ Atlantic argues that the trial justice was in error in finding as a matter of fact that Nichols was the agent of Atlantic Mutual Insurance Company in determining the appropriate amount of insurance required for the boat policy. We have generally regarded the question of agency as an issue of fact to be submitted to the trier of fact under appropriate applicable legal principles. *See Brimbau v. Ausdale Equipment Rental Corp.*, R.I., 440 A.2d 1292, 1295–96 (1982). In that case we recognized that a person might simultaneously represent two independent principals. *Id.*, 440 A.2d at 1296. Consequently, the question of agency is a mixed question of law and fact. *See DeNardo v. Fairmount Foundries Cranston, Inc.*, 121 R.I. 440, 445–49, 399 A.2d 1229, 1232–34 (1979). This court has held that an insurance agent who represented several insurance companies and had freedom of choice in determining with which company he would place an automobile fire-insurance-policy was the agent of the insured and not of the insurer. *Affleck v. Kean*, 50 R.I. 405, 407, 148 A. 324, 325 (1929). This holding was in accordance with the general principle:

> "If an agent representing several companies is applied to for insurance to a certain amount on property, the agent to select the companies and distribute the risk, he is insured's agent as to distributing the risk." 3 Couch, *Cyclopedia of Insurance Law* § 25.111 at 424 (2d ed. 1960).

■ In the case at bar the facts are essentially undisputed in respect to Nichols's role. He had advised the Mongillo family, including Alice's physician husband, for many years on home, malpractice, and business coverage, as well as on other related matters requiring insurance expertise. It was his decision as adviser to the Mongillo family to obtain the umbrella policy through the Cruff Agency from Aetna. It was his decision to procure underlying insurance on the boat from Atlantic, as it was his decision to obtain the homeowner's policy initially from Union. There is not a shred of evidence that Atlantic was in the business of advising the Mongillo family or others concerning the distribution of risks among various insurance carriers or the appropriate underlying policy of insurance in order to meet the requirements of a "scope," or "umbrella," policy. Consequently, on this record we are of the opinion that as a matter of law only one conclusion is possible in respect to Nichols's agency. That conclusion, in accordance with the general principles enunciated in *Affleck v. Kean, supra,* is that in his capacity as adviser, distributing the risk and determining the appropriate amount of coverage to obtain from any of the companies among whom the risk might be distributed, Nichols was acting as agent of the Mongillos rather than of any of the carriers. Once he decided to issue a policy, he was, of course, Atlantic's authorized agent in issuing the policy for the amount stated, but not in the initial determination of fixing that amount.

Consequently, we are of the opinion that the trial justice erred in his resolution of the mixed question of law and fact in holding that Nichols was the agent of Atlantic when he decided upon the appropriate underlying insurance needs of the Mongillos.

## III

### THE LIABILITY OF AETNA UNDER ITS SCOPE POLICY

■ We are in complete agreement with the trial justice's interpretation of the Aet-

na scope or umbrella policy, notably section 6.11 thereof.[1] The trial justice aptly set forth this interpretation as follows:

> "Read in conjunction with Section 3.1(e), Section 6.11 establishes that the Aetna policy will continue in effect on a 22 foot watercraft, but Aetna's liability will be limited to those amounts in excess of the underlying limits stated in Section 2.5. In effect, the insured has the right to be a self-insurer of the underlying amount for watercraft less than 26 feet in length. On the face of the policy, Aetna insured the risk of loss to watercraft for the amount in excess of $300,000. Aetna undertook this liability in exchange for the consideration of the policy premiums and the amount of consideration Aetna received was calculated based on the risk that Aetna was undertaking."

An examination of the entire policy convinces us that the trial justice was completely correct in this interpretation and that Aetna's liability for loss or injury in connection with this twenty-two-foot boat would not accrue until the loss exceeded the underlying sum of $300,000. In light of our determination of agency, it is unnecessary for us to consider at length Atlantic's arguments on this issue.

## IV

## THE EXTENT OF LIABILITY OF ATLANTIC MUTUAL INSURANCE COMPANY

█ Atlantic argues that under its policy its liability is limited to the face amount, namely $50,000. Since we have determined that Nichols was the agent of the insured in procuring the amount of insurance, we are in general agreement with Atlantic that its liability is limited to $50,000. However, Atlantic failed to pay over this sum at the time when Aetna entered into its agreement with Etheridge absolving the Mongillos from further liability save for a right of action against Atlantic for such coverage as its policy might be construed to afford. It is undisputed that from the time of that agreement, March 1, 1974, Atlantic has made no unequivocal tender of the sum of $50,000, nor has it paid said amount into the registry of court on behalf of either its insured or the personal-injury claimant suing partly in his own interest and partly for the reimbursement of Aetna. Although there is some suggestion that Atlantic did offer the sum of $50,000 prior to the settlement agreement, such offer was not unequivocal. Indeed, it has been set forth in an affidavit by Etheridge's attorney that "[w]hen Atlantic was approached to join in the settlement agreement, it refused to pay the $50,000, formally denying coverage as to the deceased Mongillo, and offered instead to pay $25,000."

Based upon the stipulation of the parties and the present posture of Atlantic, its refusal to contribute the face amount of its policy at the time of the structured settlement, March 1, 1974, was untenable and insupportable. Aetna took steps to protect the Mongillos, its insured, from great potential liability, including accrual of interest. At that time it clearly became the duty of Atlantic to take similar steps up to the face amount of its policy. Such an

---

**1.** Section 6.11 reads as follows:

"Insurance as afforded by each policy described in Section 2.5 shall be maintained in full effect during the currency of this policy, except for any reduction of the aggregate limit or limits contained therein solely by payment of claims in respect of accidents or occurrences during the period of this policy. *Failure of the Insured named in Section 2.1 to comply with the foregoing shall not invalidate this policy but in the event of such failure Aetna Casualty shall be liable only to the extent that it would have been liable had such Insured complied therewith.*

Upon notice that any aggregate limit of liability under any underlying policies of insurance has been exhausted, the Insured named in Section 2.1 shall immediately make all reasonable efforts to reinstate such limits. Such Insured shall give Aetna Casualty written notice as soon as practicable of any change in the scope of coverage or in the amount of limits of insurance under any underlying policies of insurance, and of the termination of any coverage or exhaustion of aggregate limits of any underlying insurer's liability." (Emphasis added.)

action would not have precluded Atlantic from litigating additional amounts claimed to be due. The position taken by Atlantic in offering only half the face amount of the policy was in disregard of the best interests of the Mongillos to whom it owed a duty to act fairly in accordance with the terms of its contract. *See Bibeault v. Hanover Insurance Co.*, R.I., 417 A.2d 313, 319 (1980).

It is true that we stated in *Factory Mutual Liability Insurance Co. v. Cooper*, 106 R.I. 632, 262 A.2d 370 (1970), that a liability insurer was limited to the face amount set forth in the relevant policy and was not obligated to pay interest in excess of its policy limit added to a judgment pursuant to G.L. 1956 (1969 Reenactment) § 9–21–10, as amended by P.L. 1981, ch. 54, § 1 (although the insured was liable for the full amount of the judgment). 106 R.I. at 635, 262 A.2d at 372. That holding arose out of an interpretation of the language of an insurance policy and did not include a determination of the obligation of an insurer toward its insured if, by reason of its conduct, it has arbitrarily and unnecessarily exposed its insured to liability in excess of the policy coverage. Although we have held that there is no action in tort for bad-faith refusal to pay the claim of an insured, under a standard fire-insurance policy, in the absence of legislative action,[2] *A.A.A. Pool Service & Supply Inc. v. Aetna Casualty & Surety Co.*, 121 R.I. 96, 98–100, 395 A.2d 724, 725–26 (1978), that holding did not extend to any other type of insurance policy beyond the standard fire-insurance policy prescribed for the State of Rhode Island. *Id.* at 100, 395 A.2d at 726.

██ In the case at bar, Aetna has been subrogated to the rights of the Mongillos as well as to the rights of Etheridge, pursuant to the agreement of March 1, 1974. The action by Etheridge against Atlantic is in vindication both of his own right against the insurer pursuant to the provisions of

the direct-action statute, § 27–7–2, and of the Mongillos's rights in the event that such a judgment was required to be paid by Alice as the owner of the boat in question. Under the circumstances of this case, we are of the opinion that to allow Alice to have been exposed to the payment of prejudgment interest, but to insulate Atlantic from such payment even though it arbitrarily refused to pay the face amount of the policy in settlement, would lead to an unjust result. Atlantic would suffer no sanction even though it abandoned its insured by refusing to offer in settlement that which it was clearly obligated to pay, namely the face amount of its policy. Therefore, we hold that Atlantic is liable to pay to Etheridge the sum of $50,000 together with interest thereon at the rate of 12 percent from the time of the structured settlement, namely March 1, 1974, down to the date of the entry of the modified judgment in the Superior Court. Thereafter, Atlantic will be liable for postjudgment interest at the rate of 12 percent pursuant to the provisions of G.L. 1956 (1969 Reenactment) § 6–26–1, as amended by P.L. 1981, ch. 54, § 2 until the date of payment.

## V

### THE LIABILITY OF WARREN NICHOLS

██ On April 5, 1984, the case of *Alice Mongillo v. Warren E. Nichols, d.b.a* was argued before us. This appeal was taken by Alice Mongillo in the event this court were to find that Nichols was not Atlantic's agent in distributing the risk between Atlantic and Aetna. Since we have determined that Nichols was not Atlantic's agent in that respect, we believe it appropriate to remand this case to the Superior Court in the light of this determination of agency. It is clear that if Nichols was not the agent of Atlantic and was not acting for a disclosed principal in determining the

---

**2.** General Laws 1956 (1969 Reenactment) § 9–1–33 as enacted by P.L. 1981, ch. 235, § 1 now authorizes such an action.

amount of coverage that he would place with Atlantic, he would certainly be liable for his own negligence. *See Affleck v. Kean*, 50 R.I. at 407–08, 148 A. at 325.

The trial justice held that Nichols's conduct did constitute both negligence and breach of contract in the following terms:

"It is the opinion of the Court that Nichols should have advised the Mongillos, who relied upon him, to obtain a $300,000 protection and indemnity policy to meet the Aetna scope policy requirements and the Court finds that failure to so advise and procure a policy in said amount constituted negligence and a breach of contract."

We are of the opinion that this determination and finding was essential to the court's decision in purporting to hold Atlantic liable as Nichols's principal. Although we disagree with the trial justice in respect to Nichols's agency in determining the distribution of the risk, we are in complete agreement with the trial justice that Nichols was negligent in giving advice that a $50,000 underlying policy sufficed to protect the Mongillos in respect to their new yacht. However, since the trial justice placed the responsibility for this negligence upon Atlantic, he did not reach the question of damages for which Nichols would be liable if he were not acting for a disclosed principal. Consequently, the case must be remanded to the trial justice for the purpose of determining the amount of damage that Alice Mongillo was entitled to receive from Nichols as a result of his negligence.

For the reasons stated, Atlantic's appeal is sustained in part and denied in part. The papers in the case may be remanded to the Superior Court with directions to enter judgment in favor of Etheridge against Atlantic in the sum of $50,000 together with interest at the rate of 12 percent from March 1, 1974, and costs. Judgment already entered in favor of Aetna is hereby affirmed. The papers in the case of *Alice Mongillo v. Warren E. Nichols, d.b.a.* may be remanded to the Superior Court for fur-

ther proceedings consistent with this opinion.