**Glenda Carole DeSENNE and Commercial Union Assurance Co., PLC, Plaintiffs,**

v.

**JAMESTOWN BOAT YARD, INC., Defendant.**

**Civ. A. No. 90–0546 P.**

United States District Court, D. Rhode Island.

Nov. 15, 1991.

Susan M. Carlin, Famiglietti & Carlin, Providence, R.I., for plaintiffs.

Albert Lauriston Parks, III, Hanson, Curran, Parks & Whitman, Providence, R.I., for defendant.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Plaintiff Carole DeSenne moved, pursuant to Fed.R.Civ.P. 59(e), for vacation and reconsideration of this Court's April 24, 1991 Order dismissing her claims against defendant, Jamestown Boat Yard. I granted plaintiff a hearing, which was held on October 24, 1991. After hearing testimony and reviewing the parties' briefs, I deny plaintiff's motion to vacate and reconsider judgment; my Order of April 24, 1991 remains in full force, and judgment is entered for defendant.

### I.

I will only briefly set out the relevant facts, which are provided in more detail in my Memorandum and Order of April 24, 1991; for the reader's ease, a copy is attached hereto as appendix "A". In November 1987, plaintiff was involved in a boat accident. The boat was owned by Arthur and Germaine Beiser and had been repaired by defendant prior to the fateful voyage.

The Beisers sued defendant in November, 1988 for personal injuries. Jamestown counter-claimed for monies still owed for repair work. On August 16, 1989, plaintiff entered into a settlement agreement with the Beisers. Pursuant to the agreement, plaintiff received $20,000 for her injuries and released the Beisers and their insurers from any and all injuries relating to the boating accident. The release also assigned all causes of action plaintiff might have growing out of the accident to the Beisers and authorized them to bring suit or release her claims. In May 1990, the Beisers, after a trial, settled with defen-

dant and released defendant from all claims relating to the accident.

Plaintiff filed the instant case on November 2, 1990, for the personal injuries she sustained as a result of the accident. On February 1, 1991, defendant moved to dismiss plaintiff's complaint, relying on the express language of the release assigning plaintiff's cause of action to the Beisers. In response, plaintiff argued that assignments of personal injury claims are void as against public policy. Defendant cited Rhode Island caselaw holding that, particularly in the settlement context, personal injury claims may be assigned as long as there is no danger of champerty or maintenance. I found the cases cited by defendant to be analogous to the present case, and on April 24, 1991, I dismissed plaintiff's complaint.

Plaintiff filed a motion for this Court to vacate and reconsider judgment under Rule 59(e) on May 6, 1991. Plaintiff now addresses the cases cited by defendant's reply brief in support of its motion to dismiss. She contends that this Court misinterpreted those cases and that they provide only a very narrow exception to the rule forbidding assignment of personal injury claims.

Plaintiff also argues that she never *intended* to assign her claims against defendant and that evidence of her intent should be allowed on several grounds. First, relying in part on her interpretation of the Rhode Island cases on assignment of claims, she argues that the release is ambiguous. Second, she argues that neither she nor the Beisers intended the assignment, thus creating a mutual mistake. Finally, she claims that there was misrepresentation on the part of the Beiser's insurance agents who told her that, under the release, she could still pursue an action against defendant. In support of her arguments, plaintiff submitted an affidavit which states, in pertinent part, that

[i]n executing the Release, my intent and my understanding of the intent of the other parties to the Release resulting from my specific inquiries in this regard was that my claims against the Defen-

dant in this action as well as my claims against anyone other than the parties released under the Release would and could be pursued.... I would not have signed the "Release" if I had known that doing so would deprive me of my ability to obtain recovery for my personal injury claims against the Defendant.

Defendant, in addressing the standard for vacating and reconsidering judgment, argues that there are no extraordinary circumstances present in this case and that plaintiff raises arguments she could have, and should have, raised when the original motion to dismiss was being argued. Defendant explains the Rhode Island assignment cases and asserts that this Court was correct in holding, in its April 24, 1991 Order, that the assignment was valid. Defendant does not believe that the release is ambiguous and thus argues that the parol evidence rule bars extrinsic evidence. Plaintiff's affidavit, which defendant argues should have been filed when the motion to dismiss was under consideration, demonstrates only unilateral mistake and does not substantiate her claims of misrepresentation, fraud or overreaching. Finally, the language in the release clearly assigns plaintiff's claims and if she had read the release, as she had a duty to do, she would have understood that.

On October 24, 1991, I decided to hold an evidentiary hearing focused on the issue of possible misrepresentations made by the Beisers' insurance agent to Ms. DeSenne before she signed the release.

The facts are undisputed: Ms. DeSenne met with the Beisers' insurance agent on a number of occasions. At these meetings, which were rather routine, the agent taped a statement of facts and assured the plaintiff that the company would pay all her present and future medical bills, which they have done and continue to do. Their final meeting took place on August 16, 1989; the agent advised her that the company wanted to settle all her wage losses up to that point so that "the waters would not be muddied in the Beisers' case against Jamestown Boat Yard." On being questioned by Ms. DeSenne, the agent assured

her that she would not be releasing the company from payment of future medical bills, the money would not be taxable, and neither the wage settlement, nor the signed release would "in any way interfere at a future date from her suing Jamestown Boat Yard." (This quote is taken from my personal notes and may be at variance in some insignificant way from the precise words used.) The agent handed her the release and said, "why don't you look this over—this is what I want you to sign." He then walked away. In spite of this suggestion, the plaintiff signed the release without reading it. As a result of this release, Ms. DeSenne received $20,000.00 and assigned all claims arising from the accident to the Beisers.

The plaintiff is a highly intelligent and articulate woman. At present, she works as a consultant with non-profit corporations, organizing fundraising campaigns, managing publicity, and booking talent.

The reasons she offers for signing the release were her thought and intention only to release the Beisers; the assurance of the agent that any suit she might want to institute against the defendant was preserved; and though she knew the agent was not a lawyer, her belief was that he was a knowledgeable insurance agent.

The agent's testimony, which was presented by way of a deposition, substantially tracks Ms. DeSenne's account. He stated that the purpose of his meetings with the plaintiff was to "try to settle her claim or any claim that she might have had *solely* against Arthur Beiser and underwriters representing Arthur Beiser" (Tr. at 13); he believed "that the release that was being taken was being taken solely for the protection of Arthur Beiser and underwriters insuring Arthur Beiser" (Tr. at 19); and that for him, the "purpose (of the meeting) was solely to eliminate her claim against Mr. Beiser." (Tr. at 22). The agent stated: "I want to make it clear that at no time did I intend to take a release that would cut off her subrogation or her claim rights against the Jamestown Boat Yard. It was solely with the purpose of cutting off her claim to come against Arthur Beiser and underwriters representing Arthur Beiser." (Tr. at 24).

To me, it is pellucidly clear that Ms. DeSenne and the agent intended to preserve the plaintiff's rights against the defendant. However, that does not end the matter; it is equally clear that the agent did not mislead Ms. DeSenne as to the legal effect of the release. True, it may be that he told her she was not releasing any claims against the defendant, but the fact remains he was emphatic in telling her he was not a lawyer. I accept his testimony which I have previously set forth, as well as that which follows: "And I was very very quick to point out to her that I was not an attorney, and not in a position to give legal advice." (Tr. at 21). "I took the release solely with my layman's understanding, okay, and I did not profess that to be definitive to her, that she would be able to pursue her own claim against Jamestown Boat Yard ... I asked her if she would discuss it with Mr. Snow (the attorney representing Mr. Beiser in his claim against the defendant), because Mr. Snow was already representing underwriters on behalf of Arthur Beiser. I said it was my understanding as I felt like she would not be waiving any of her rights, okay, to go against the Jamestown Boat Yard, and that consequently, I deferred, and referred her to Mr. Snow for specific clarification on that point." (Tr. at 23, 24). "However, she persisted in asking me my thoughts, and I suggested that she contact Mr. Snow, okay, for legal advice." (Tr. at 21, 22).

Surely, this uncontradicted testimony establishes that Ms. DeSenne was not misled; that she had serious questions as to the scope of the release in question; and that with all these uncertainties, she chose not to seek the advice of an attorney, though the agent suggested she do so. She took a chance and signed the release.

At the October 24 hearing, the plaintiff's attorney argued that she was not looking to have the release set aside, but was looking "to have the document reformed with respect only to the extent of what was intended the effect of the document would

be with respect to other than the Beisers and specifically Jamestown Boat Yard. We are not looking to set aside the release. We don't argue that there was any fraud on the part of the Beisers or their insurance company. What we have here is a meeting of the minds between both parties and a written expression of that meeting that does not reflect what the minds agreed to.... She was only giving up subrogation rights ... she was not assigning all her rights nor could she ... Beisers and their insurance company were looking only to be able to pursue those claims of Ms. DeSenne against the Boat Yard up to what they had paid ... that's all they were looking to do."

If there is any merit to this argument it is not addressed by the present action, since the Beisers are not the defendants.

## II.

A district court has broad discretion in deciding a motion under Rule 59(e).[1] *United States v. Land at 5 Bell Rock Rd.*, 896 F.2d 605, 611 (1st Cir.1990). "The most common grounds for allowing a Rule 59(e) motion are 'for manifest error of law or of fact, or for newly discovered evidence.'" *Kalman v. Berlyn Corp.*, 706 F.Supp. 970, 974 (D.Mass.1989) (*quoting In re Crozier Bros., Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y.1986)). To show manifest error of law or fact, the moving party must demonstrate a substantial reason the court is in error. *Id.* If the movant is relying on newly discovered evidence, he must show that the evidence existed when judgment was entered but that the movant had good reason to be ignorant of its existence. *Id.*

Rule 59(e) motions are for the purpose of "*re*consideration, not initial consideration." *Harley–Davidson Motor Co. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir.

1990). "Parties normally cannot use them to 'raise arguments which could, and should, have been made before the judgment issued.'" *Id.* (*quoting FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)). A district court may reject evidence or arguments not raised until the motion for reconsideration. *See 5 Bell Rock Rd.*, 896 F.2d at 611 (rejecting affidavits filed two weeks after summary judgment granted); *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 29–30 (1st Cir.1980) (" 'A defeated litigant cannot set aside a judgment ... because he failed to present on a motion for summary judgment all of the facts known to him that might have been useful to the court.'" (*quoting* 11 *Wright & Miller* § 2858, at 173 (1973))).

Plaintiff, in the present motion, relies to a great extent on arguments and facts that could have been raised in her opposition to the original motion to dismiss but, inexplicably, were not. The only part of her motion that does relate to reconsideration—her arguments about the assignment of personal injury claims—is unpersuasive; I stand by my conclusion in my April 24 Memorandum and Order that the assignment was valid. I also do not believe that the release is ambiguous and requires clarifying extrinsic evidence. I, therefore, would have been on solid ground in denying plaintiff's reconsideration motion without holding a hearing. I was troubled, however, by her allegations of misrepresentations and, in the interests of fairness, I granted plaintiff's request for a hearing. I find that the hearing clearly established there were no misrepresentations.

Under Rhode Island law, the validity of a release is based on three factors: "(1) the existence of consideration for the release, (2) the experience of the person executing the release, and (3) the question of whether the person executing the release was repre-

---

**1.** Fed.R.Civ.P. 59(e) states:
   A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.
   Fed.R.Civ.P. 59(a) sets out the standard for such a motion to reconsider:
   A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action tried without a jury, for any of

the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

sented by counsel." *Guglielmi v. Rhode Island Hosp. Trust*, 573 A.2d 687, 689 (R.I. 1990). The release in the instant case was supported by the $20,000 consideration plaintiff received. Having heard plaintiff's testimony at the October 24 hearing, I find she is of sufficient intelligence and experience to have understood the release and knowingly signed it, fully cognizant that there was no certainty as to the survival of any claim she might have against the defendant. Indeed, she did not have a lawyer, but she was unquestionably advised to consult one.

When these three factors enunciated above are satisfied, a "court will find a release to be valid and binding unless it has been procured through fraud, misrepresentation, overreaching, or a material mistake on the part of either party." *Id.* Not one of these factors exists in this case. The parol evidence rule allows extrinsic evidence for the purpose of showing fraud or mistake. *Fram Corp. v. Davis*, 121 R.I. 583, 401 A.2d 1269, 1272 (1979). A mutual mistake will void a release, but it must be a mistake "involving both parties, a mistake independently made by each party." *Boccarossa v. Watkins*, 112 R.I. 551, 313 A.2d 135, 137 (1973) (citations omitted). In addition, "[a] mistake by one party with knowledge thereof by the other is equivalent to a mutual mistake." *Hashway v. Ciba–Geigy Corp.*, 755 F.2d 209, 211 (1st Cir.1985). Here the defendant played no part in the execution of the release; as between Ms. DeSenne and Jamestown Boat Yard, there could not be a mutual mistake, and Jamestown Boat Yard is the party she seeks to sue. A fraudulent misrepresentation voids a release only if there is detrimental reliance upon the misrepresentation. *Guglielmi*, 573 A.2d at 690. The plaintiff concedes there was no fraudulent misrepresentation.

Again, after reviewing the evidence adduced on October 24, I am not persuaded that there were material misrepresentations.[2] In reality, this is a situation in which plaintiff "either did not read or did not appreciate the significance of the clause which [s]he now attacks." *D'Antuono v. CCH Computax Sys., Inc.*, 570 F.Supp. 708, 714 (D.R.I.1983). However, " 'a party who signs an instrument manifests [her] assent to it and cannot later complain that [s]he did not read the instrument or that [s]he did not understand its contents.' " *Id.* (*quoting F.D. McKendall Lumber Co. v. Kalian*, 425 A.2d 515, 518 (R.I.1981)). "Were it otherwise, signed contracts would be little more than scraps of paper, subject to the selective recollection of the parties in interest." *Id.* I can appreciate the plaintiff's frustrations. Intelligent minds, at times, do foolish things; Ms. DeSenne's signing of this release with full knowledge that within its four corners lurked the abandonment of her claim against the defendant is an example. There is no legal basis to support a court's condonation of such conduct. Having failed to show misrepresentation, plaintiff is bound by the release assigning away her cause of action.

### III.

Plaintiff was unable to demonstrate that the release was obtained by misrepresentation. I therefore deny her motion to vacate judgment. The Order entered April 24, 1991 stands and plaintiff's complaint is dismissed.

SO ORDERED.

---

2. Entwined in plaintiff's argument is the contention that the release should be set aside for misrepresentation of law. This being a diversity action, I am bound by Rhode Island law, *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In this state, "relief will not be granted for a mistake of law." *Vieira v. Davol*, 120 R.I. 944, 392 A.2d 375, 378 (1978); which it defined as "a mistake as to the legal consequences of an assumed state of facts," citing from the Restatement of Restitution.

Furthermore, as I have said, this is an action against Jamestown Boat Yard actually based on the conduct of an insurance agent representing the Beisers. It follows that the action is against the wrong party. There was no confidential relationship between the parties, i.e., Ms. DeSenne and the agent. *Hicks v. Soroka*, 188 A.2d 133, 139 (Del.Super.Ct.1963).

## APPENDIX A

## MEMORANDUM AND ORDER

Defendant has moved to dismiss this maritime personal injury claim based on assignments and releases entered into between various combinations of the plaintiffs, Jamestown and third parties. After considering the agreements, applicable case law and policy considerations, this Court grants Jamestown's motion.

### I. *Factual Background*

Considering the number of parties and agreements, it is best to proceed in a chronological fashion. Arthur and Germaine Beiser purchased the passenger yacht Isle in June 1987 and arranged for defendant, Jamestown Boat Yard ("Jamestown"), to make repairs and alterations in anticipation of a trans-Atlantic voyage. Jamestown completed the work in October 1987 and returned the Isle to the Beisers. Glenda Carole DeSenne, the only remaining plaintiff in this action, was a member of the Isle's crew from November 1–7, 1987, while it was en route from Point Judith, Rhode Island to the Azores, Gibraltar and the Mediterranean. On November 7, 1987, while in the North Atlantic, the Isle began to take on water, had to be abandoned, and sank.

The Beisers filed suit against Jamestown on November 17, 1988, for the loss of the Isle and personal injuries suffered during the sinking and rescue. Jamestown cross-claimed for money it claimed the Beisers still owed for the repair work.

On August 16, 1989, Ms. DeSenne entered into a settlement agreement with the Beisers. This agreement is at the heart of the present motion to dismiss. Under the agreement, Ms. DeSenne received $20,000, and released Mr. Beiser and his insurers from any and all claims relating to the incident on November 7, 1987. The agreement also stated, in pertinent part:

I [Ms. DeSenne] hereby *irrevocably give, transfer and assign to Arthur Beiser,* Hull & Company, Inc., LLU and Underwriters at Lloyds [Mr. Beiser's insurers], its successors and/or assigns, *all rights, titles and interests in and to any and all claims, liens and/or causes of action* which I now have or may have in the future growing out of or in any way connected with the accident which occurred on or about November 7, 1987.... Further, I irrevocably authorize and empower Arthur Beiser, [et al.], to make claim, file suit and to take all other legal action necessary with the same force and effect as I, Carol DeSenne, could do. I also *give, transfer and assign* to the people and companies mentioned above the *express right and power. to reassign, release or dismiss with prejudice any liens, rights or causes of action* which have occurred or may occur in the future growing out of or in any way connected with the accident which occurred on or about November 7, 1987, as described above. Arthur Beiser, [et al.], specifically reserve their right to proceed against any other party or parties for this casualty and resulting damages, including without limitation, Jamestown Boatyard and/or their insurers.... (emphasis added)

The Beisers' case against Jamestown proceeded to trial on May 17, 1990. During the trial Ms. DeSenne testified as a witness for the Beisers. On May 23, 1990 the parties reached a settlement. Under the settlement agreement, Jamestown agreed to pay the Beisers $300,000; twenty days later the Beisers were to pay Jamestown $10,472.32. Jamestown and the Beisers also exchanged .releases for all claims.

Ms. DeSenne filed the present action on November 2, 1990 for her personal injuries arising out of the sinking and rescue. Originally, Commercial Union Assurance Co., PLC, was also a plaintiff. Commercial Union, the lead underwriter on a policy covering the Isle and the Beisers, sued based upon its subrogation rights. On January 17, 1991, this Court entered Commercial Union's voluntary dismissal of its claim without prejudice.

### II. *Discussion*

Jamestown argues for dismissal on the express language of the agreements: in

August 1989, Ms. DeSenne assigned all her rights against Jamestown to Mr. Beiser and his insurers and in May 1990, Mr. Beiser released Jamestown from all claims he had against Jamestown. According to Jamestown, Ms. DeSenne thus no longer has any rights against it.

Ms. DeSenne contends that the assignment cannot be enforced because at common law assignments of personal injury claims are barred by public policy. She also argues that Jamestown has no standing to seek enforcement because it was not a party to the agreement. It is true, as Ms. DeSenne asserts, that in Rhode Island the common law forbids the assignment of personal injury causes of action. *Hospital Service Corp. v. Pennsylvania Insurance Co.*, 101 R.I. 708, 227 A.2d 105, 109 (1967). The public policy reason behind the bar against such assignments is the prevention of champerty and maintenance.[1] *Id.*

Ms. DeSenne, however, fails to address later cases, cited by Jamestown in its reply brief, that created exceptions to the common law rule. In *Hospital Service Corp.* itself, the Rhode Island Supreme Court upheld a subrogation agreement under which Blue Cross was allowed to recover against third-party tortfeasors for money Blue Cross had already paid for its subscriber's medical expenses. Although careful to distinguish between subrogation and assignment, *id.*, the court recognized that times had changed since the formation of the common law rule, as set out in *Tyler v. Superior Court*, 30 R.I. 107, 73 A. 467 (1909). The court stated:

> We have come a long way since the ruling in *Tyler v. Superior Court, supra*. A plan such as offered by Blue Cross which affords a measurable degree of protection for the medical and financial well being of its subscribers was unknown when the prohibition against assignment of personal injuries was set forth by this court. *Id.* at 110, 73 A. 467.

The most significant case, *Etheridge v. Atlantic Mutual Insurance Co.*, 480 A.2d 1341 (R.I.1984) went much further than *Hospital Service Corp.* and upheld an actual assignment of a personal injury claim. In *Etheridge* the tortfeasors and the insurer providing an umbrella policy settled with the injured party. *Etheridge*, 480 A.2d at 1344. The tortfeasors assigned to the insurer holding the umbrella policy all claims they had against the insurer providing the underlying policy. *Id.* When the latter insurance company challenged the assignment, both the trial court and the Supreme Court of Rhode Island upheld the assignment because, although not involving subrogation as in *Hospital Service Corp.*, there was no danger of champerty and maintenance. *Id.* The Supreme Court stated:

> The ruling of *Tyler v. Superior Court, supra*, was designed to avoid the evils of champerty and maintenance. Applying this rule under circumstances in which champerty and maintenance are completely absent would be to throw the baby out with the bath water. We do not reject the general prohibition against the purchasing of personal-injury claims by intermeddling volunteers for their own profit. We simply cannot allow a salutary rule to be applied in a context in which it has no meaning and thereby obstruct an appropriate device for the payment of a claim by an insurance carrier that has an obligation to the insured to absolve him of liability without depriving itself of the right to pursue action against another insurance carrier that it considers to be wholly or partly liable for the loss. *Id.* at 1345.

The Supreme Court followed the reasoning of *Etheridge* in *Mello v. General Insurance Co.*, 525 A.2d 1304 (R.I.1987). In *Mello*, the plaintiff was awarded a judgment in excess of the tortfeasor's insurance policy. *Id.* at 1305. The insurance company paid only up to the policy limit.

---

**1.** According to Black's Law Dictionary, 4th edition (1968), champerty is "[a] bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." Maintenance is "maintaining, supporting, or promoting the litigation of another."

The tortfeasor then entered an agreement with the plaintiff whereby the tortfeasor assigned to the plaintiff its claim against its insurer for bad faith failure to settle within the policy limits in exchange for plaintiff's agreement not to levy execution for the remainder of the judgment. *Id.* The Supreme Court of Rhode Island did not wish to formulate any broad rule allowing assignment of bad faith claims, but said that under the circumstances of the case, the reasoning of *Etheridge* applied and the assignment would be upheld. *Id.* at 1305–06.

The case before me does not fit squarely within the available Rhode Island cases. Although insurance companies are involved, they are not the main parties to the dispute. This case is also not in the same posture as the others because the party being sued is trying to enforce, rather than void, the assignment. Nonetheless, I find that this case is similar to *Etheridge* and *Mello* because all involve settlements between multiple parties. The assignments were made in furtherance of settlement and were not "the purchasing of personal-injury claims by intermeddling volunteers for their own profit." *See Etheridge*, 480 A.2d at 1345. As there is no danger of champerty or maintenance, I see no reason to allow Ms. DeSenne to evade the clear agreement she entered into and thus upset the settlement the parties agreed upon. Furthermore, I find that Jamestown does have standing to enforce the assignment by reason of its agreement with the Beisers releasing Jamestown of all liability for claims held by the Beisers.

## CONCLUSION

The agreement entered into between Ms. DeSenne and the Beisers does not contravene public policy and will be enforced. Under the clear terms of the agreement, Ms. DeSenne assigned all her rights against Jamestown to Mr. Beiser and his insurers. Mr. Beiser relinquished all claims it had against Jamestown, including, by implication, that originally belonging to Ms. DeSenne. Ms. DeSenne, therefore, has no claim against Jamestown and Jamestown's motion to dismiss her complaint is hereby granted.