USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-9005

 JAMES R. HOWE,

 Debtor, Appellant,

 v.

 ANDREW S. RICHARDSON, ESQUIRE,

 Chapter 7 Trustee, Appellee,

 and

 RHODE ISLAND DEPOSITORS ECONOMIC PROTECTION CORP.,

 Unsecured Creditor, Appellee.
 ____________________

 APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL

 FOR THE FIRST CIRCUIT

 

 Before

 Selya, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 
 
 George M. Prescott, Jr. with whom George M. Prescott and Law 
Office of George M. Prescott were on brief for appellant.
 Andrew S. Richardson with whom Thomas P. Quinn and Boyajian,
Harrington & Richardson were on brief for Chapter 7 trustee,
appellee.
 Justin T. Shay with whom Charles S. Beal and Cameron &
Mittleman LLP were on brief for unsecured creditor, appellee.

 ____________________

 October 8, 1999
 ____________________ BOUDIN, Circuit Judge. On November 20, 1997, James
Howe filed a petition in the federal bankruptcy court in Rhode
Island under chapter 7, 11 U.S.C. 701 et seq. In amended
schedules, he claimed as exempt three legal claims then pending
or to be asserted by him in different courts, assigning them
values as follows: a claim for personal injuries sustained by
Howe in a motor vehicle accident ($15,000); a claim for breach of
contract and related wrongs ($600,000); and a claim to recover on
a dishonored check ($10). Like all of Howe's property as of the
date he filed for bankruptcy, his legal claims became part of the
bankruptcy "estate" under the Bankruptcy Code, 11 U.S.C.
541(a)(1), and are available to his creditors, unless they are
exempt property.
 The Bankruptcy Code permitted Howe to retain "any
property that is exempt under . . . [Rhode Island] or local law,"
11 U.S.C. 522(b)(2)(A), but the Code does not say "exempt" from
what. Obviously, the general notion is exempt from creditors,
not (say) exempt from local property taxes. Some states have
statutes listing property that is exempt "for purposes of
bankruptcy," e.g., Ga. Code Ann. 44-13-100, but Rhode Island
law is less explicit. Nevertheless, one provision listing
property "exempt from attachment" includes a series of items akin
to those commonly exempted in bankruptcy (e.g., wearing apparel,
working tools up to $500, furniture up to $1,000, homestead up to
$100,000), R.I. Gen. Laws 9-26-4, 4.1, and the parties accept
that the listing sets forth bankruptcy exemptions.
 The three legal claims sought to be exempted by Howe do
not fit within any specific category in sections 9-26-4 and 9-26-
4.1; but Howe argued that they do fit within a catch-all
category, comprising "[s]uch other property, real, personal, or
mixed, in possession or actions as is or shall be exempted from
attachment and execution, either permanently or temporarily, by
general or specific acts, charters of incorporation, or by the
policy of the law." R.I. Gen. Laws 9-26-4(10). Howe argued in
the bankruptcy court that under Rhode Island common law, his
unliquidated legal claims against others could not be seized and
that they therefore fell within the statute's provision for
property "exempted from attachment and execution . . . by the
policy of the law."
 The trustee and an unsecured creditor objected, and the
bankruptcy court rejected Howe's position, as well as other
arguments not pressed on this appeal. The Bankruptcy Appellate
Panel sustained the bankruptcy court. Howe has now appealed to
this court. He contends, and we assume this to be true, that
"the policy of the law" phrase includes exemptions that would
otherwise qualify even if they exist in common rather than
statutory law. Cf. Arch Lumber Co. v. Dohm, 98 A.2d 840 (R.I.
1953) (exempting children's toys). The critical question is what
Rhode Island law provides as to unliquidated legal claims and
whether what it provides amounts to a bankruptcy exemption.
 In previous centuries, it was very hard in a law action
for a creditor to lay hands on potential legal claims that the
debtor might have against a third party or even an unliquidated
debt where the obligation was admitted but the amount in
dispute. Pre-judgment "attachment," to establish jurisdiction or
secure an anticipated judgment, was not generally available as to
any property at common law, Martin v. Lincoln Bar, Inc., 622 A.2d
464, 469 (R.I. 1993); see generally Crandall, Hagedorn & Smith,
The Law of Debtors and Creditors 6.04[1][b], at 6-33 (rev. ed.
1991). As for post-judgment "execution" against the debtor's
assets, this was achieved through specific writs (e.g., fieri
facias authorizing seizure and sale of personal property) that
failed to reach equitable interests of the debtor and certain
intangibles. Crandall, supra, 6.05[5][a], at 6-115. 
 Thereafter, pre-judgment attachment was developed as a
remedy by statute. E.g., R.I. Gen. Laws 10-5-1 et seq. Post-
judgment remedies were expanded initially by the equity courts,
which allowed a "creditor's bill," one of whose functions was to
reach equitable interests of the debtor that fell outside the
common law writs. Crandall, supra, 6.05[5][a], at 6-115 to 6-
116. Statutes, in turn, have expanded and in some measure
supplanted the non-statutory common law and equitable remedies of
judgment creditors. E.g., R.I. Gen. Laws 9-26-1 et seq., 9-
28-1 et seq.
 There is a false neatness to this picture. The Rhode
Island statutes pertaining to such remedies are a tangle of
provisions cobbled together over time; they use words like
"attachment" with somewhat different meanings in different
contexts; and they include other important remedies, such as
garnishment--which may be pre- or post-judgment--to reach debtor
assets in the hands of third parties, R.I. Gen. Laws 10-17-1
et seq.. Statutory statements that such and such may or may not
be "attached" appear, variously phrased, in various locations. 
E.g., id. 9-26-4, 9-26-4.1, 9-26-5, 36-10-34.
 Still, nothing in the Rhode Island statutes to which we
have been directed expresses any affirmative policy against the
attachment, either pre- or post-judgment, of a debtor's legal
claims as a class. Certainly specific kinds of legal claims
(e.g., to receive pensions or back wages) are affirmatively
protected to one degree or another from attachment, e.g., R.I.
Gen. Laws 9-26-4(8), (12), and we will return to Rhode Island's
special treatment of attempts to assign personal injury claims. 
But there is no general statutory bar to seizure of intangibles. 
Indeed, as we shall see, Rhode Island law facilitates such
seizures. Against this background, we return to the question of
what meaning should be given to section 9-26-4(10).
 In Howe's view, that his legal claims could not (we
will assume) be attached at common law pre-judgment, or executed
against post-judgment, means that Rhode Island does have a
"policy of the [common] law" that "exempt[s] from attachment and
execution" such legal claims. But an alternative view is that
the failure of common law remedies to reach such claims should be
regarded merely as a gap in the law, reflecting the writ-based
character of the common law (no writ, no right) and not as an
"exemption" reflecting a policy or purpose to safeguard such
interests from seizure by creditors in general or bankruptcy
creditors in particular.
 Either reading of section 9-26-4(10) accords with its
language, and fortunately we have an answer from the Rhode Island
courts as to how they construe the section. In Rhode Island Nat.
Bank v. Chase, 12 A. 233 (R.I. 1887), the state supreme court
faced a claim that the predecessor to this section prevented
attachment of someone's interest in life insurance policies that
had no cash surrender value, the objection being made that the
property interest was not attachable because it was "equitable,
uncertain and contingent." Id. at 234. In language that
effectively rejects Howe's present position, the court said that
"property which is meant to be protected by the exemption
referred to is not property which is, from its nature, beyond the
reach of attachment, but property which it is a matter of public
policy to protect from attachment." Id..
 Howe counters by saying that the insurance policies had
an ascertainable value and refers us to McKendall v. Patullo, 160
A. 202 (R.I. 1932), in which the Rhode Island Supreme Court
referred to "[t]he general rule . . . that an unliquidated claim
cannot be garnished." Id. at 203. There are obvious policy
objections to a garnishment of an unliquidated debt to the extent
that it calls on the garnishee to pay over moneys before they are
found to be owed. But here the trustee does not seek garnishment
or any immediate payment at all from those against whom Howe has
what we will assume are disputed claims; rather, the trustee
seeks only to take over Howe's claims against those third
parties, a step that does not implicate the concerns of the
McKendall court.
 There is further evidence that Rhode Island has no
general policy against attachment of claims against third
parties. In the course of codifying execution remedies for
judgment creditors, Rhode Island enacted a statutory provision
codifying and arguably expanding the old creditor's bill devised
by the equity courts. R.I. Gen. Laws 9-28-1. This provision
permits an unsatisfied judgment creditor to reach "any equitable
estate, any equitable assets, or any choses in action of the
judgment debtor, except such as shall be exempt from attachment
by virtue of statutory provision." On its face, this language
refutes any claim that Rhode Island is hostile to creditors
taking over debtors legal claims against third parties.
 Howe responds by pointing to the just quoted
qualification ("except such . . ."), arguing that this
incorporates section 9-26-4(10)'s reference to "policy"
exemptions. But we have already explained why, under Chase, the
gap left at common law as to intangibles is not properly viewed
as an exemption at all. Further, Howe's contrary view would
virtually moot the inclusion in section 9-28-1 of "any choses in
action of the judgment debtor" since in general these were not
subject to attachment at common law and, on Howe's reading, would
have been added by the statute as a remedy only to be immediately
subtracted by the "except such" proviso.
 Howe's approach to section 9-26-4(10) was rejected by
the Supreme Court, in an analogous context, almost a century ago. 
Page v. Edmunds, 187 U.S. 596 (1903). Still, one can find more
recent decisions looking in both directions. Compare In re
Geise, 992 F.2d 651, 658-59 (7th Cir. 1993) (holding that
property not subject to sequestration is not therefore exempt),
with In re Mitchell, 73 B.R. 93 (Bankr. E.D. Mo. 1987) (holding
property exempt where, inter alia, claim not subject to
garnishment, aff'd 855 F.2d 859 (8th Cir. 1988). In the end
almost everything turns on how an individual state construes its
own mix of statutes and common law rules pertaining to
exemptions. Happily, Chase provides us such guidance, even
though Howe can find scraps of language in his favor in other
Rhode Island cases. But who would expect otherwise after more
than a century of decisions?
 This brings us to a different, narrower issue, namely,
whether Rhode Island law "exempts" personal injury claims from
being reached by creditors even though it does not exempt claims
against third parties in general from attachment or execution. 
Interestingly, the "federal" list of exemptions does provide an
exemption of up to $16,150 for a debtor's right to receive actual
compensation for "personal bodily injury" (not including pain and
suffering or compensation for actual pecuniary loss). 11 U.S.C.
 522(d)(11)(D). But Howe chose the alternative list of
exemptions available under Rhode Island law, and while one can
imagine that Rhode Island might have a policy reflecting the same
protective concerns toward bodily injury, neither Rhode Island's
statutes nor its case law adopts such a position.
 What Rhode Island cases do express is a policy of
refusing to enforce the "assignment" of personal injury claims
before they are reduced to judgment. Tyler v. Superior Court, 73
A. 467 (R.I. 1909). But this rule, although apparently still in
force, is based on concerns--reflected in the now hoary rules
against champerty and maintenance--about promoting litigation by
"intermeddling volunteers" who purchase personal injury claims
"for their own profit." Etheridge v. Atlantic Mut. Ins. Co., 480
A.2d 1341, 1344-46 (R.I. 1984). Those concerns are pretty faint
in the case of a bankruptcy trustee who is simply trying to
muster the bankrupt's property for the benefit of creditors, none
of whom likely wanted to be in the business of pursuing the
debtor's claims against anyone.
 While we have found no Rhode Island case directly in
point, its courts have sensibly relaxed the ban against
assignment of personal injury claims where the concerns just
noted are not implicated. E.g., id. at 1345; see also DeSenne v.
Jamestown Boat Yard, Inc., 968 F.2d 1388, 1390 (1st Cir. 1992)
(applying Rhode Island law). Thus, it strikes us as doubtful
that Rhode Island's anti-assignment policy would bar an
assignment in favor of creditors. However this may be, we think
it clear in light of Chase that the Rhode Island policy limiting
assignability of personal injury claims would never be described
as an "exemption" within the meaning of section 9-26-4(10).
 Affirmed.